## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**AHMED SALIM FARAJ ABU KHATALLAH,**<br><br>also known as "Ahmed Abu Khatallah,"<br>also known as "Ahmed Mukatallah"<br>also known as "Ahmed Bukatallah"<br>also known as "Sheik,"<br><br>Defendant. | Case No. 14-cr-00141 (CRC) |

## MEMORANDUM OPINION AND ORDER

On December 23, 2015, the Court denied Defendant Ahmed Abu Khatallah's motion to dismiss Counts One and Two, Four through Fifteen, and Eighteen of the Superseding Indictment. See United States v. Abu Khatallah, No. 14-cr-00141, 2015 WL 9451032 (Dec. 23, 2015). The Court reserved ruling on his motion to dismiss Counts Sixteen and Seventeen for lack of extraterritorial jurisdiction. Those counts charge Abu Khatallah with maliciously destroying and injuring dwellings and property and placing lives in jeopardy within the special maritime and territorial jurisdiction of the United States ("SMTJ") under 18 U.S.C. § 1363, the statute criminalizing those actions, and 18 U.S.C. § 7, the statute defining the SMTJ.

The Court reserved judgment on Counts Sixteen and Seventeen in order to satisfy itself whether Abu Khatallah's conduct, as alleged by the government, took place within the SMTJ, a question not fully addressed in the parties' briefing. The Court thus ordered supplemental briefing on the following questions "with respect to the special maritime and territorial jurisdiction of the United States as defined in 18 U.S.C. § 7":

(1) Does 18 U.S.C. § 7(3) apply only to lands reserved or acquired by the United States domestically or does it encompass lands reserved or acquired by the United States abroad?

(2) If the government proves that Abu Khatallah "did willfully and maliciously destroy and injure and attempt to destroy and injure a structure, conveyance, and other real and personal property, . . . and place[] the lives of United States nationals in danger," Indictment Count Seventeen ¶ 2, will the government have proved that Abu Khatallah committed an offense "against a national of the United States" within 18 U.S.C. § 7(9)?

Order of December 23, 2015, ECF No. 139.  The parties submitted briefing on these questions in January 2016.  Because, as discussed below, the Court concludes that 18 U.S.C. § 7(9) affords it jurisdiction over Counts Sixteen and Seventeen of the Superseding Indictment, it need not address the parties' arguments in response to the first question above, regarding 18 U.S.C. § 7(3).

## I.    Legal Standards

Title 18 of the U.S. Code, Section 1363, criminalizes maliciously destroying or injuring property within the SMTJ, and provides that, if "the life of any person be placed in jeopardy" in the course of doing so, a lengthier sentence applies:

> Whoever, within the special maritime and territorial jurisdiction of the United States, willfully and maliciously destroys or injures any structure, conveyance, or other real or personal property, or attempts or conspires to do such an act, shall be fined under this title or imprisoned not more than five years, or both, and if the building be a dwelling, or the life of any person be placed in jeopardy, shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1363.  Title 18, section 7(9) provides, in relevant part, that "[w]ith respect to offenses committed *by or against a national of the United States*," the following locations fall within the SMTJ:

> (A) the premises of United States diplomatic, consular, military or other United States Government missions or entities in foreign States, including the buildings, parts of buildings, and land appurtenant or ancillary thereto or used for purposes of those missions or entities, irrespective of ownership; and

(B) residences in foreign States and the land appurtenant or ancillary thereto, irrespective of ownership, used for purposes of those missions or entities or used by United States personnel assigned to those missions or entities.

18 U.S.C. § 7(9) (emphasis added).  Section 7(9), therefore, brings within the ambit of the SMTJ premises of U.S. missions and entities abroad and residences used for purposes thereof, so long as the relevant offense is committed by or against a U.S. national.

The second question in the Court's supplemental-briefing order sought to address whether Counts Sixteen and Seventeen of the Superseding Indictment—in charging Abu Khatallah with violations of § 1363—in effect charge him with committing offenses "against a national of the United States" within the meaning of § 7(9).  In other words, if the government proves that Abu Khatallah maliciously destroyed or injured property as alleged in the Superseding Indictment, and in so doing, "placed the lives of United States nationals in danger," Indictment Count Seventeen ¶ 2, will it have proved that he committed an offense *against* a U.S. national?  The purpose of this inquiry is to determine whether the conduct at issue, as the government alleges it, occurred within the SMTJ, a requirement for prosecution under § 1363.

## II.    Analysis

Congress defined two distinct crimes in 18 U.S.C. § 1363.  The first entails "willfully and maliciously destroy[ing] or injur[ing] any structure, conveyance, or other real or personal property, or attempt[ing] or conspir[ing] to do such an act" within the SMTJ.  A person who commits that crime may be imprisoned for up to five years.  The second involves the same conduct where the targeted "building [is] a dwelling" or where the act results in "the life of any person be[ing] placed in jeopardy."  A person who commits that crime may be imprisoned for up to twenty years.

Abu Khatallah disagrees with this analysis of the statute. As he sees it, "[t]he enhanced penalty for injury to any dwellings or placing lives in jeopardy 'does not create two separate crimes.'" Def.'s Suppl. Brief 10 (quoting Holiday v. Johnston, 313 U.S. 342, 349 (1941)). Rather, § 1363 defines a single "property crime concerned with 'buildings or property within special maritime and territorial jurisdiction.'" Id. at 2. This position is untenable, however, in light of the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). There, the Court held that any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict" is an "element" that must be submitted to a jury and proved beyond a reasonable doubt. Id. at 494. The endangerment of a person's life is a "fact that, by law, increases the penalty" under § 1363, and is therefore "an 'element' [of a crime] that must be submitted to the jury and found beyond a reasonable doubt." Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013). The government recognizes as much. Govt.'s Suppl. Br. 7. The crime with which Abu Khatallah is charged, therefore, has the following elements: 1) willfully and maliciously destroying or injuring any structure, conveyance, or other real or personal property, or attempting or conspiring to do such an act, 2) within the SMTJ, 3) where the destroyed or injured building is a dwelling or where the act results in the life of any person being placed in jeopardy.

As a threshold matter, the Court finds that the government is not legally precluded from presenting evidence under 18 U.S.C. § 7(9) in support of the second element. In other words, to demonstrate that the conduct at issue occurred within the SMTJ, the government may show that, "[w]ith respect to offenses committed by or against a national of the United States," 18 U.S.C. § 7(9), the Special Mission and Annex constituted "the premises of United States diplomatic,

4

consular, military or other United States Government missions or entities in foreign states," id. § 9(A), or that they were "residences in foreign States," id. § 9(B).[1]

To prove that the offense was "committed . . . against a national of the United States" under § 7(9), the government seeks to show, *inter alia*, that Abu Khatallah "placed the lives of United States nationals in danger" as a result of his conduct.  Indictment Count Sixteen ¶ 2; id. Count Seventeen ¶ 2.  The question for the Court, then, is whether the crimes charged in Counts Sixteen and Seventeen constitute offenses "committed . . . against a national of the United States."  18 U.S.C. § 7(9).  The Court concludes that they do.  Where the government seeks to satisfy its burden as to an element of a crime by showing that a person's life was endangered,[2] and that person is a U.S. national, the offense is necessarily one "committed . . . against a national of the United States."  18 U.S.C. § 7(9).  Prosecution under § 1363—for an offense "committed . . . against a national of the United States"—is therefore appropriate where the government alleges and seeks to prove that, in the course of maliciously destroying and injuring dwellings and property within the SMTJ, a defendant placed the lives of U.S. nationals in danger.

---

[1]  To the extent that the Court might be inclined to follow the approach to interpreting § 7(9) outlined in United States v. Passaro, 577 F.3d 207 (4th Cir. 2009), that case hardly justifies precluding the government from proceeding under § 7(9).  The sorts of factors Passaro deemed relevant—including "the length of United States control over th[e] premises, the substantiality of its improvements, [and] actual use of the premises," id. at 214—plainly call for fact-specific inquiries.  Passaro even deemed the testimony of "trial witnesses" relevant in determining whether a particular military installation qualified as a "military . . . mission[]" under § 7(9).  Id. at 215.  The Court also notes that Abu Khatallah did not respond to the government's assertion that the Special Mission and Annex constituted "other United States . . . *entities* in foreign States."  18 U.S.C. § 7(9)(A) (emphasis added).

[2]  Although the offense at issue concerns risk of physical harm, the Court does not express an opinion as to whether a crime involving financial or other harm to a U.S. national might also constitute an offense "committed . . . against a national of the United States."  18 U.S.C. § 7(9).

Abu Khatallah's objections on this point are unavailing.  In his view, he has not been charged with committing a crime against a U.S. national—or any person, for that matter—because § 1363 simply defines "a property crime . . . , committed only if there has been damage, or the intent to damage, a building," and which has the "unambiguous statutory purpose" of protecting "[b]uildings or property within special maritime and territorial jurisdiction."  Def.'s Suppl. Br. 10.  Yet the government has charged Abu Khatallah with a crime that includes as one of its elements the endangerment of human life and that carries a maximum penalty fifteen years greater than when no life is placed in jeopardy.  That crime is most assuredly concerned with protecting people, not just buildings or property.

In addition, Abu Khatallah claims, "[p]lacing a life in jeopardy is not an offense against a person under federal law.  The word 'offense' necessarily means a chargeable offense under U.S. federal law; if an 'offense' against a U.S. national could be any conceivable offense—criminal or otherwise—§ 7(9) would be rendered meaningless."  Id. at 11.  Abu Khatallah is surely correct that the word "offense" refers to a chargeable offense under U.S. federal law, and that an "offense against a national of the United States" cannot mean any conceivable offense.  But this argument misses the mark.  The government does not contend—and this Court does not hold—that "[p]lacing a life in jeopardy is," on its own, "an offense against a person under federal law." Id.  Nor does the Court hold that any criminal act that results in harm or the risk of harm to a U.S. national constitutes an "offense against a national of the United States."  Rather, the Court concludes that when placing a life in jeopardy satisfies an element of a crime with which a person is charged, the charged offense is necessarily one "committed . . . against a national of the United States."  18 U.S.C. § 7(9).

Lastly, Abu Khatallah argues that when Congress placed within the SMTJ "offenses committed . . . against a national of the United States," id., it meant to import the common-law meaning of the term "crimes against the person," which "include only those offenses that, by their nature, are likely to involve the *intentional* use or threat of physical force against another person," Def.'s Suppl. Br. 11–12 (emphasis added) (citing United States v. Trejo-Galvan, 304 F.3d 406 (5th Cir. 2002) (holding that the misdemeanor of driving under the influence of alcohol did not constitute a "crime against the person" under the common-law definition of that term)). Although Congress may "intend[] to incorporate the well-settled meaning of the common-law terms it uses," United States v. Castleman, 134 S. Ct. 1405, 1410 (2014) (quoting Sekhar v. United States, 133 S. Ct. 2720, 2724 (2013)), Congress has not used such a term here. Instead, it spoke of "offenses committed by or against a national of the United States," 18 U.S.C. § 7(9)— broad language that encompasses crimes involving U.S. nationals, either as perpetrators or victims.

Abu Khatallah counters that this interpretation leads to "the absurd conclusion that . . . the government would have jurisdiction to prosecute . . . even when the perpetrator was not aware that a U.S. person was present and a life could be endangered." Def.'s Suppl. Br. 12. How can it be, he asks, that "[w]hether a building is within special territorial jurisdiction" is "wholly contingent upon the arbitrary presence of a U.S. person and the degree of risk posed to that person at the time of the injury to the building"? Id. But such a result is far from absurd. The federal Hostage Taking Act, for example, prohibits (in part) seizing or detaining a person anywhere in the world for the purpose of compelling a governmental organization to take or not take some action. The Act "authoriz[es] assertion of U.S. jurisdiction where 'the offender or the person seized or detained is a national of the United States.'" United States v. Yunis, 924 F.2d

1086, 1090 (D.C. Cir. 1991) (quoting 18 U.S.C. § 1203(b)(1)(A)); <u>see also</u> <u>id.</u> (finding it

sufficient that "two of the passengers on Flight 402 *were U.S. citizens*") (emphasis added).  In

such an instance, the victim's U.S. "citizenship [or status as a U.S. national] is an element of the

offense that the government ha[s] to prove beyond a reasonable doubt."  <u>United States v. Clarke</u>,

767 F. Supp. 2d 12, 64 (D.D.C. 2011), <u>aff'd sub nom.</u> <u>United States v. Straker</u>, 800 F.3d 570

(D.C. Cir. 2015).  The offender's knowledge of the victim's nationality is irrelevant.  <u>See</u> <u>Yunis</u>,

924 F.2d at 1096.  Similarly, federal law prohibiting destruction of aircraft expressly provides for

jurisdiction when, *inter alia*, "a national of the United States was on board, or would have been

on board, the aircraft."  18 U.S.C. § 32(b).  Federal jurisdiction in that scenario may indeed be

"wholly contingent upon the arbitrary presence of a U.S. person," Def.'s Suppl. Br. 12, a

reflection of Congress's intent to "confer[] jurisdiction based on the characteristics of the victim

regardless of the offender's knowledge thereof," Govt.'s Suppl. Br. 10.

     This understanding is consistent with the well-established principle that courts need not

infer an unwritten *mens rea* element with respect to factual circumstances that are "sufficient to

confer jurisdiction on the federal courts."  <u>United States v. Feola</u>, 420 U.S. 671, 676 n.9 (1975).

In <u>Feola</u>, for example, the Supreme Court refused to construe a federal statute "as embodying an

unexpressed requirement that an assailant be aware that his victim is a federal officer," for "[a]ll

the statute requires is an intent to assault, not an intent to assault a federal officer."  <u>Id.</u> at 684.

And in <u>United States v. Yermian</u>, 468 U.S. 63 (1984), the Court held that a defendant charged

with making a false statement within the jurisdiction of a federal agency could be prosecuted

without "proof of actual knowledge of federal agency jurisdiction," <u>id.</u> at 75.  So it is not

categorically absurd to permit prosecutions based on the "arbitrary presence" of certain factual

circumstances—including victim characteristics—that coincide with otherwise-proscribed

8

behavior.  A person need not have known that the victim of his crime was a U.S. national for jurisdiction to lie under 18 U.S.C. § 7(9).

### III.     Conclusion

In sum, to convict Abu Khatallah for the crimes with which he is charged under 18 U.S.C. § 1363, the government will have to prove beyond a reasonable doubt that he "willfully and maliciously destroy[ed] or injure[d] any structure, conveyance, or other real or personal property, or attempt[ed] or conspire[d] to do such an act."  The government will also have to prove beyond a reasonable doubt that the locations where the criminal act allegedly took place— that is, the Special Mission and Annex—were "within the special maritime and territorial jurisdiction of the United States."  In proving that element of § 1363, the government may show that the Special Mission and Annex fell within a certain class of buildings, 18 U.S.C. § 7(9)(A)-(B), and that at least one person against whom the alleged offense was committed—that is, at least one person whose life was endangered—was a national of the United States.  The allegations in Counts Sixteen and Seventeen of the indictment against Abu Khatallah, if proven, would satisfy all of the elements required for criminal liability under 18 U.S.C. § 1363.  The Court will therefore not dismiss either of these counts.  And because the Court finds that the offenses as charged in Counts Sixteen and Seventeen of the Superseding Indictment fall within the SMTJ under 18 U.S.C. § 7(9), it need not at this time reach the question of potential jurisdiction under 18 U.S.C. § 7(3).

Therefore, it is hereby

**ORDERED** that [91] Defendant's Motion to Dismiss as to Counts Sixteen and Seventeen

be **DENIED**.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   March 2, 2016