# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :

        **v.**        :        **14-cr-141 (CRC)**

AHMED ABU KHATALLAH    :

## DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

Mr. Ahmed Abu Khatallah, through undersigned counsel, respectfully submits the following objections to the Presentence Investigation Report (hereinafter "PSR") and moves this Honorable Court to compel the United States Probation Office to amend the PSR as set forth below.

## Factual Background

The evidence at trial demonstrated that on September 11 and 12, 2012, the United States Special Mission in Benghazi, Libya, was attacked while United States personnel were at the facility.  During that attack, buildings were set on fire, two Americans (Ambassador J. Christopher Stevens and Sean Patrick Smith) died and another (Scott Wickland) was injured. After the initial attack and after United States personnel evacuated, numerous individuals unlawfully entered the Mission facility and destroyed U.S. property.  Later that night, a second facility, known as the Annex, was attacked, two more Americans (Glen Anthony Doherty and Tyrone Snowden Woods) died and two others (David Ubben and Mark Geist) were injured.

On November 28, 2017, the jury in this matter found Mr. Abu Khatallah not guilty of all charges relating to the initial attack on the Mission, including the murder of Ambassador Stevens (Count Three), the murder of Mr. Smith (Count Four), the attempted murder of

Mr. Wickland (Count Seven), killing Ambassador Stevens in the course of an attack on the Mission involving the use of a firearm or dangerous weapon (Count Ten), killing Mr. Smith in the course of an attack on the Mission involving the use of a firearm or dangerous weapon (Count Eleven), and maliciously damaging and destroying the Mission by means of fire or an explosive causing the death of Ambassador Stevens or Mr. Smith (Count Fourteen). The jury also found Mr. Abu Khatallah not guilty of all charges relating to the attack on the Annex, including the murder of Mr. Woods (Count Five), the murder of Mr. Doherty (Count Six), the attempted murder of Mr. Ubben (Count Eight), the attempted murder of Mr. Geist (Count Nine), killing Mr. Woods in the course of an attack on the Annex involving the use of a firearm or dangerous weapon (Count Twelve), killing Mr. Doherty in the course of an attack on the Annex involving the use of a firearm or dangerous weapon (Count Thirteen), maliciously damaging and destroying the Annex by means of fire or an explosive causing the death of Mr. Woods or Mr. Doherty (Count Fifteen), and maliciously destroying and injuring the Annex placing lives in jeopardy (Count Seventeen). In addition, the jury found Mr. Abu Khatallah not guilty of brandishing or discharging a firearm and not guilty of using a destructive device (parts of Count Eighteen).

In finding Mr. Abu Khatallah not guilty of these charges, the jury rejected the government's arguments that Mr. Abu Khatallah was guilty as an aider and abettor or co-conspirator. At the government's request, the Court instructed the jury that Mr. Abu Khatallah could be convicted of any of the charged offenses if he "aided, abetted, counseled, commanded, induced, or procured [a person who committed the offense] with respect to at least one element of the specific crime charged in the Indictment." *See* Jury Instructions, ECF No. 464, Instruction No. 26. The Court also instructed the jury that if it found that Mr. Abu Khatallah was part of a

conspiracy to provide material support for any of the charged offenses (Count One), he could be found guilty of any of the other offenses if: "1.  There was a conspiracy to provide material support; 2.  The charged offense was committed by a co-conspirator of Mr. Abu Khatallah; 3.  Mr. Abu Khatallah was a member of the conspiracy to provide material support at the time the charged offense was committed; 4.  The charged offense was committed during the existence of the conspiracy; 5.  The charged offense was committed in furtherance of the conspiracy; and 6.  The charged offense was a reasonably foreseeable consequence of the conspiracy." *Id.* Although the evidence established the initial attack on the Mission and that fires were set during that attack which led to the deaths of Ambassador Stevens and Mr. Smith and injured Mr. Wickland, the jury found that Mr. Abu Khatallah was not guilty of participating in, aiding and abetting or conspiring to commit that initial attack.  Similarly, although the evidence established that the Annex was attacked and that the attack led to the deaths of Mr. Woods and Mr. Doherty and the injuries sustained by Mr. Ubben and Mr. Geist, the jury found that Mr. Abu Khatallah was not guilty of participating in, aiding and abetting, or conspiring to commit that attack.

The jury convicted Mr. Abu Khatallah only of Counts One, Two, Sixteen, and Eighteen. Count One charged Mr. Abu Khatallah with conspiring to provide material support for each of the offenses charged in Counts Three through Seventeen of the Indictment, and Count Two charged him with the substantive offense of providing material support for each of the offenses charged in Counts Three through Seventeen.  The jury, however, acquitted Mr. Abu Khatallah of all of the underlying predicate offenses in Counts Three through Fifteen and Seventeen, finding him guilty only of Count Sixteen, maliciously destroying and injuring the Mission and placing lives in jeopardy.   The jury also found that the material support that Mr. Abu Khatallah provided

did not result in death.  Thus, the jury necessarily rejected the allegations that Mr. Abu Khatallah provided material support for any of the offense related to the initial attack on the Mission or the attack on the Annex, both of which resulted in death.   The Court should sentence Mr. Abu Khatallah only for the offenses for which he was convicted:  conspiring to provide material support for, providing material support for, and committing the substantive offense of, maliciously destroying and injuring the Mission during the attack that occurred after U.S. personnel evacuated and placing lives in jeopardy while doing so.

## Argument

The PSR inaccurately reports the offenses of conviction and the conduct for which Mr. Abu Khatallah will be sentenced and is written as if Mr. Abu Khatallah was convicted of all of the charged offenses.  The report misstates the description of the offenses of conviction and the description of the facts underlying the offenses of convictions, including Mr. Abu Khatallah's role in and the victim of the offenses for which he was convicted.  The report also erroneously calculates the applicable sentencing range under the United States Sentencing Guidelines by applying the base offense level for acquitted conduct and applying adjustments – for terrorism and a supervisory role in the offense – that are not supported by the evidence.

Accurate statements of the offenses and applicable Guidelines are important because these factors will inform the Court's sentencing decision.  *See* 18 U.S.C. § 3553(a).  An accurate description of the offenses of conviction is also critical because the Bureau of Prisons will use the PSR when classifying Mr. Abu Khatallah.  *See United States v. Rivera*, 117 F. Supp. 3d 172, 182 (E.D.N.Y. 2015) ("The significance of the presentence report does not end at the sentencing. Rather, the final version of the report accompanies the defendant into the Bureau of Prisons if he is sentenced to prison, where it plays an important role in the defendant's designation to a

correctional facility and in his eligibility for certain programs."); United States Dept. of Justice

Fed. Bureau of Prisons, Program Statement P5100.08, ch.3,  p.1 (Sept. 12, 2006) (noting use of

Presentence Investigation Report in designation and computation procedures).  Thus, the PSR

must be corrected because the Court's sentencing decision should be based on the offenses and

allegations that the jury found were supported by the evidence – not false claims rejected by the

jury – and because the false impression that the offenses of conviction were the more serious

allegations charged in the Indictment could prejudice Mr. Abu Khatallah as he serves his

sentence.

## I.      OFFENSES OF CONVICTION

### A.   Counts One and Two

Counts One and Two of the Indictment charged Mr. Abu Khatallah with conspiring to

violate and violating 18 U.S.C. § 2339A.  Section 2339A provides a penalty of life incarceration

for providing material support resulting in death and a penalty of up to 15 years incarceration for

the lesser offense of providing material support.  Although Mr. Abu Khatallah was charged with

the greater offense, he was found not guilty of that offense and convicted only of the lesser

offense.  ECF No. 488 (Verdict Form).

The PSR, on page 2 and in ¶¶ 7, 36, 37, 40, and 43, incorrectly lists the offenses of

conviction in Count 1 and Count 2 as "Conspiracy to Provide," and "Providing, Material Support

and Resources *to Terrorists Resulting in Death*."  (Emphasis added).  The PSR should be

amended by striking the phrase "Resulting in Death" because the jury found Mr. Abu Khatallah

not guilty of the "Resulting in Death" portion of the offense.

The phrase "to Terrorists" also should be stricken.  Although the statute titles this offense

by using the phrase "to Terrorists," the statute did not require a finding regarding terrorists or

terrorism, and the Jury Instructions [ECF No. 464] and Verdict Form [ECF No. 488] described these offenses without any references to "terrorist."  Including this phrase in the PSR gives the false impression that the jury found that Mr. Abu Khatallah's conduct constituted terrorism. There was no such finding.  The PSR should list the offenses of conviction accurately as "Conspiracy to Provide Material Support and Resources" and "Providing Material Support and Resources."

### B.  Count Eighteen

As set forth in Mr. Abu Khatallah's Memorandum in Support of Motion for Judgment of Acquittal on Count Eighteen, ECF No. 507, the verdict on Count Eighteen must be set aside and this count dismissed because, in light of the United States Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), Mr. Abu Khatallah is innocent of carrying a firearm during a crime of violence, as charged under 18 U.S.C. § 924(c).  For this reason, the references to this charge on page 2 and in ¶¶ 39, 42, 82, 83, 86, 89, 92, 100, 103, 107 and 108 should be stricken.

If the Court does not dismiss Count Eighteen prior to sentencing, the PSR should be amended to accurately state the offense of conviction.  On page 2 and in ¶¶ 7 and 39, the PSR lists the offense of conviction in Count Eighteen as "Using, Carrying, *Brandishing, and Discharging* a Firearm During a Crime of Violence and Aiding and Abetting and Causing an Act to Be Done."  (Emphasis added).  Mr. Abu Khatallah was found *not guilty* of brandishing or discharging a weapon.  ECF No. 488.  Thus, if Count Eighteen is not dismissed, the report should list the offense of conviction accurately as "Using and Carrying a Firearm During a Crime of Violence and Aiding and Abetting and Causing an Act to Be Done."

II.      **OFFENSE CONDUCT**

Under "Offense Conduct," the PSR should describe the conduct that constituted the offenses of conviction.  Instead, in ¶¶ 14 through 30, the PSR repeats allegations that were not proven at trial, are not supported by credible evidence, were rejected by the jury, and are not related to the offenses of conviction.  The Probation Office acknowledges that the claims reported under "Offense Conduct" are not based on the evidence at trial, but instead were obtained from "the government, the Superseding Indictment and the Government's Motion for Pretrial Detention."   PSR ¶ 9.  The description of the offenses should be based on the evidence at trial and the jury's verdict – not unsupported arguments and allegations made by the government pretrial.

Specifically, ¶ 15 should be deleted.  This paragraph describes Mr. Abu Khatallah as the commander of Ubayadah Bin Jarrah ("UBJ").  Although Mr. Abu Khatallah was a UBJ commander during the Libyan revolution in 2011, UBJ was disbanded prior to the attacks on the Mission and Annex in 2012.  Thus, UBJ is not relevant to the offense conduct.  Paragraph 15 also describes UBJ as "an Islamist extremist militia in Benghazi, which had the goal of establishing Sharia law in Libya."  However, "sharia influences the legal codes in most Muslim-majority countries," and does not equate to "Islamic extremism."   *Five myths about sharia*, The Washington Post (June 24, 2016), *available at* https://www.washingtonpost.com/opinions/five-myths-about-sharia/2016/06/24/7e3efb7a-31ef-11e6-8758-d58e76e11b12_story.html?utm_term=.b136125ec5bc.  While Mr. Abu Khatallah is a devout Muslim and reportedly expressed views supporting the independence of Libya from the influences of other countries, including the United States, he is not an "Islamist extremist" and does not hold "anti-Western views."  The claim in ¶ 15 that UBJ merged with Ansar al-Sharia

("AAS") also is inaccurate. This was an allegation that was not supported by the evidence at trial. The notation in ¶ 15 that the U.S. Department of State designated Mr. Abu Khatallah as a Specially Designated Global Terrorist not only is irrelevant to the offenses of conviction, but also occurred years after these offenses and was based on false information that the jury rejected. Similarly, the reference in ¶ 15, to the Department of State's 2014 designation of AAS and the basis for that designation is irrelevant and should be stricken. As the government now concedes, *see* Government's Response to Presentence Investigation Report at 2, the evidence at trial did not support the pretrial allegation that Mr. Abu Khatallah was affiliated with AAS.

Paragraph 16 also should be deleted, with the exception of an accurate description of the conspiracy of conviction. In ¶ 16, the PSR claims that Mr. Abu Khatallah conspired with others "to effectuate" the attack on the Mission, apparently referring to the initial attack, and that he was "motivated by his extremist ideology." These allegations were not supported by the evidence at trial and were rejected by the jury. Paragraph 16 also lists all of the objects of the conspiracy charged in the indictment, including those rejected by the jury. The only object of the conspiracy for which Mr. Abu Khatallah was found guilty and will be sentenced was to destroy buildings and other property at the Mission, and this is the only object of the conspiracy that should be listed under offense conduct.

Paragraph 17 also should be deleted. This paragraph describes allegations that Mr. Abu Khatallah planned the initial attack on the Mission and his alleged motives for doing so. These allegations were based on false testimony that the jury rejected.

Paragraph 19 describes the initial attack on the Mission and the later attack on the Annex. This is not "offense conduct" because Mr. Abu Khatallah was acquitted of this conduct. The last sentence in ¶ 19 inaccurately states: "Defendant Abu Khatallah actively participated in the

attack on the Mission by coordinating the efforts of his coconspirators and turning away emergency responders."  If the Court finds that ¶ 19, describing the initial attack on the Mission and the later attack on the Annex, should remain in the PSR, the last sentence should read: "Defendant Abu Khatallah did not participate in, conspire to participate in, or aid and abet those who participated in the initial attack of the Mission or the attack on the Annex."

Paragraph 20 should be amended to match the evidence at trial and the jury's findings. The first sentence indicates that Mr. Abu Khatallah "supervised the exploitation of material from the scene by numerous men."  There was no evidence at trial that he was supervising anyone. This phrase, therefore, should be stricken.  In ¶ 20, the PSR also states that sensitive information about the location of the Annex was taken from the Mission.  The evidence and verdict did not support this allegation, and it should be stricken.  Similarly, the claim that Mr. Abu Khatallah "returned to an AAS camp in Benghazi, where a large group of armed AAS members began assembling for the attack on the Annex," was not supported by evidence at trial.  Although there was testimony that Mr. Abu Khatallah stated that he took someone to an AAS camp after leaving the Mission, there was no evidence that attackers assembled at that camp.  Neither the evidence, nor the verdict supported this allegation, and it should be stricken.

In ¶ 21, the PSR describes the attack on the Annex.  Again, Mr. Abu Khatallah was acquitted of any involvement in that attack.  Thus, this is not "offense conduct," and this paragraph should be stricken.

With the exception of part of the last sentence in ¶ 22, the evidence and the verdict did not support the allegations in this paragraph.  With regard to the last sentence in ¶ 22, a defense witness did testify that Mr. Abu Khatallah was concerned that the U.S. may capture him in

Libya, but Mr. Abu Khatallah had not increased personal security and that portion of the report should be stricken.

In ¶¶ 23-30, the report lists several individuals as being "members of UBJ under the defendant's command." However, as noted above, UBJ was disbanded prior to the attacks in 2012, and these men were not under Mr. Abu Khatallah's command at the time of the attacks. The evidence and verdict did not support the allegation that Mr. Abu Khatallah led these men that night, and that allegation should be stricken from the report. Moreover, UBJ was not Mr. Abu Khatallah's "operational cell" as stated in ¶¶ 23, 25, and 26, and the jury rejected the allegation, stated in ¶¶ 23 and 24, that Mr. Abu Khatallah along with others acquired weapons prior to the attack. These allegations also should be stricken.

In ¶ 27, the report states: "Evidence at trial showed defendant Abu Khatallah coordinating with AAS during the Attack." This appears to refer to the attack on the Annex, despite the fact that Mr. Abu Khatallah was acquitted of all charges related to the Annex, and the evidence at trial supported a finding that Mr. Abu Khatallah was at home, three miles from the Annex, when that facility was attacked. *See* Stipulation 195. Moreover, there was no evidence at trial that Mr. Abu Khatallah coordinated with AAS. For these reasons, this sentence should be stricken.

Finally, in ¶ 28, the report claims that during the initial attack on the Mission, Mr. Abu Khatallah operated a road block and turned away emergency responders. By acquitting Mr. Abu Khatallah of all charges relating to the initial attack on the Mission, the jury rejected these allegations, and they should be stricken from the report.

### III.    VICTIMS OF THE OFFENSE

In ¶¶ 14, 32, and 33, the PSR lists the victims of the initial attack on the Mission and the attack on the Annex.  These men, however, were not victims of the attack on the property at the Mission after U.S. personnel were evacuated, the charges for which Mr. Abu Khatallah was convicted.  By listing these men as victims of the offenses in Mr. Abu Khatallah's PSR, the report suggests that Mr. Abu Khatallah should be held responsible for deaths and injuries for which the jury specifically found Mr. Abu Khatallah not responsible.  Mr. Abu Khatallah was convicted of attacking the property at the Mission and, in doing so, placing lives in jeopardy.  However, the jury rejected the allegation that Mr. Abu Khatallah was present at the Mission or involved in the initial attack on the Mission when U.S. personnel were present.  The jury also rejected the charges related to the Annex.  For these reasons, ¶¶ 14, 32 and 33 should be stricken, and under "Victim Impact," only the United States, as the owner of the Mission property, should be listed as the victim of the offenses of conviction.  As with the incorrect reporting of the offenses of conviction, the listing of victims of offenses that Mr. Abu Khatallah did not commit as victims of the offenses of conviction could prejudice Mr. Abu Khatallah as he serves his sentence in the Bureau of Prisons.

### IV.    GUIDELINES CALCULATIONS

#### A.   Base Offense Level

The PSR calculates the applicable sentencing range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") as "Life."  This calculation, however, is based on the charged offenses, rather than the offenses of conviction, and on unproven allegations that were rejected by the jury.

The Guidelines require that the Court select the guideline applicable to the offenses of conviction. *See* U.S.S.G. § 1B1.2(a) ("Determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)."). In ¶ 44, the PSR calculates the base offense level for Counts One, Two and Sixteen as a level 38, based on the application of U.S.S.G. § 2K1.4(c)(1), and a finding that "death resulted, or the offense was intended to cause death or serious bodily injury." The PSR then uses the guideline for second degree murder, U.S.S.G. § 2A1.2(a), as the "most analogous" guideline.

Sections 2K1.4(c)(1) and 2A1.2(a) do not apply to the offenses of conviction. The jury specifically found Mr. Abu Khatallah not guilty of any of the murder charges and found that the offenses of conviction – violations of 18 U.S.C. § 2339A – did *not* result in death.[1] The jury rejected the government's arguments that Mr. Abu Khatallah was responsible for or intended to cause death or serious bodily injury. Given these findings, § 2K1.4(c)(1) does not apply to the offense of conviction (and § 2A1.2(a) is not analogous). Instead, the applicable offense level is level 24, pursuant to § 2K1.4(a)(1), because the offense involved a government facility.

### B. Terrorism Adjustment

The jury made no finding regarding the purpose of the destruction of property that occurred at the Mission after U.S. personnel evacuated, and there was no credible evidence that

---

[1] The object of the conspiracy charged in Count One did include all of the charged offenses. However, as set forth above, the jury's verdict established which offense (Count Sixteen) was the object of the conspiracy of conviction because the jury acquitted Mr. Abu Khatallah of the remaining predicate offenses and specifically acquitted him of providing material support "resulting in death." *Cf. United States v. Smith*, 267 F.3d 1154, 1159 (D.C. Cir. 2001) (where defendant convicted of conspiracy to commit more than one offense and guilty verdict did not establish object of the conspiracy because jury hung on substantive offense, court required to make findings using beyond reasonable doubt standard).

Mr. Abu Khatallah entered the Mission property in order to promote a crime of terrorism.  In

¶ 46, the report incorrectly applies the terrorism adjustment in U.S.S.G. § 3A1.4(a), which

applies only if the offense "is calculated to influence or affect the conduct of government by

intimidation or coercion, or to retaliate against government conduct."  18 U.S.C. § 2332a(g)(5).

The government bears the burden of demonstrating that an adjustment applies.  *See United States

v. Bapack*, 129 F.3d 1320, 1324 (D.C. Cir. 1997).  The jury's findings and the evidence at trial

do not support the application of the terrorism adjustment.  The jury rejected any – and there was

no credible – evidence that Mr. Abu Khatallah committed the offenses of conviction in order to

influence or affect any U.S. policy or to retaliate against the conduct of the U.S. government.

The application of the terrorism adjustment under the circumstances of this case and

absent a jury finding would violate Mr. Abu Khatallah's Sixth Amendment right to trial by jury

and Fifth Amendment rights under the Due Process Clause.  Absent a finding by the jury, the

adjustment can only be applied based on findings of fact made by the Court.  A finding by the

preponderance of the evidence that Mr. Abu Khatallah had the statutorily required motivation

would result in one of the steepest guideline increases in existence and would require

consecutive sentences in order to comport with the Guidelines' stacking rule.  *See* U.S.S.G. §

5G1.2(d).  Beginning with the appropriate base offense level of 24, and with no other

adjustments, application of the terrorism adjustment would increase Mr. Abu Khatallah's

advisory sentencing range would go from a range of 51 to 63 months (offense level 24, criminal

history category I) to a range of 324 to 405 months (offense level 36, criminal history category

VI).  A staggering increase of more than 22 to 28 *years*, the imposition of which would require

consecutive sentences for Count One, charging the conspiracy to commit the substantive offense

of providing material support for the predicate offense charged in Count Sixteen; Count Two,

charging the  substantive offense of providing material support for the predicate offense charged

in Count Sixteen; and Count Sixteen, charging the predicate offense.  Because such a sentence

would not be upheld as reasonable but for the application of the terrorism adjustment which

could only be based on a finding of fact by the Court, the application of the adjustment and a

sentence based on the adjustment would violate Mr. Abu Khatallah's Sixth Amendment right to

trial by jury.

Even after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005,

"there will inevitably be some constitutional violations under a system of substantive

reasonableness review, because there will be some sentences that will be upheld as reasonable

only because of the existence of judge-found facts." *Rita v. United States*, 551 U.S. 338, 374

(2007) (Scalia, J., joined by Thomas, J., concurring).  The Supreme Court has "not rule[d] out as-

applied Sixth Amendment challenges to sentences that would not have been upheld as reasonable

on the facts encompassed by the jury verdict or guilty plea," *id.* at 375, so "[t]he door therefore

remains open for a defendant to demonstrate that his sentence, whether inside or outside the

advisory Guidelines range, would not have been upheld but for the existence of a fact found by

the sentencing judge and not by the jury," *Gall v. United States*, 552 U.S. 38, 60 (2007) (Scalia,

J., concurring); *see also United States v. Conatser*, 514 F.3d 508, 530-31 (6th Cir. 2008) (Moore,

J., concurring).

If the Court applies the terrorism adjustment, Mr. Abu Khatallah's case will present an

example of a severe sentence that would be held substantively unreasonable but for the Court's

finding that he had the requisite motivation for the terrorism adjustment to apply.  Without that

motivational finding, there could be no rational basis for a more than twenty-year upward

variance and consecutive sentences, particularly given that concurrent sentences are the statutory

default rule. 18 U.S.C. § 3584(a).  Moreover, the more than twenty-year guideline increase

resulting from § 3A1.4 is not tied to sentencing purposes, but reflects only the Commission's

implementation of a specific congressional directive without independent policy or rationale.

The evidence in this case would not support what would amount to an upward variance

from a guideline range of 51 to 63 months to an effective life sentence.  Given the jury's

findings, the Court could not justify varying more than *twenty years* upward in the absence of the

finding that he possessed the motivation required for the terrorism adjustment.  Such a variance

would put Mr. Abu Khatallah on a par with those who committed the initial attack at the Mission

and the following attack at the Annex – which the jury found Mr. Abu Khatallah not guilty of –

equating him with someone who actually committed first degree murder, U.S.S.G. § 2A2.1, and

who actually has the prior convictions to be in Criminal History Category VI—the worst

category for the worst recidivists.  *See* U.S. Sent'g Comm'n, *Recidivism Among Federal

Offenders: A Comprehensive Overview* 18-19 (2016) (*"Recidivism Overview"*).

No sentencing purpose could be served by sentencing Mr. Abu Khatallah to die in a U.S.

prison.  He did not plan the attack on the Mission and was not aware it was happening until after

the initial attack.  According to the government's evidence and the jury's findings, he did not

enter the Mission or attack property at the Mission until after U.S. personnel evacuated, and he

was at his home, miles away when the Annex attack occurred.  An upward variance by more

than twenty years, in the absence of the motivational finding required by the terrorism

adjustment, would thus be reversed as substantively unreasonable.  As such, the imposition of a

sentence whose legality depends on a finding by the Court that Mr. Abu Khatallah had the

motive required by § 2332b(g)(5) would violate the Sixth Amendment.

To be sure, the Supreme Court has not yet found a sentence to constitute an as-applied

Sixth Amendment violation, and the D.C. Circuit has suggested that no such challenged would be possible. *See United States v. Jones*, 744 F.3d 1362, 1368-70 (D.C. Cir. 2014). Nonetheless, as several Supreme Court Justices noted in dissenting from the denial of the petition for writ of certiorari in *Jones*, "[t]his has gone on long enough." *Jones v. United States*, 135 S. Ct. 8, 9 (2014) (Scalia, Ginsburg & Thomas, JJ., dissenting). Under current Supreme Court law, it "unavoidably follows that any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury. It may not be found by a judge." *Id.* at 8. The Court should avoid this error by declining to apply the terrorism adjustment.

### C. Organizer or Leader Adjustment

In ¶¶ 31 and 47, the report applies the organizer or leader adjustment pursuant to U.S.S.G. § 3B1.1(a), which requires a finding that Mr. Abu Khatallah "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The "organizer or leader" adjustment under U.S.S.G. § 3B1.1(a) only applies if a defendant exercised control over other participants in the criminal activity. *See United States v. Graham*, 162 F.3d 1180, 1185 (D.C. Cir. 1998). In determining whether an aggravating role adjustment applies, the Court should consider: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.2, Appl. Note 4; *see United States v. Olejiya*, 754 F.3d 986, 990 (D.C. Cir. 2014).

Again, the government bears the burden of demonstrating that an adjustment applies.  *See Bapack*, 129 F.3d at 1324.  The jury rejected the government's argument that Mr. Abu Khatallah was an organizer or a leader of criminal activity, and the evidence does not support such a finding.  The allegations made by the government, and set forth in ¶ 31 of the report, were not supported by the evidence at trial, as the not guilty verdicts on Counts Three through Fifteen and Seventeen reflect.

In ¶ 31, the PSR states that Mr. Abu Khatallah was the commander of UBJ.  As noted above, the evidence at trial demonstrated that he was the commander of UBJ during the Libyan revolution in 2011, but UBJ dissolved prior to the attacks that occurred in September 2012.  Mr. Abu Khatallah's mere status as a former commander during the revolution is not sufficient to demonstrate an aggravated role in the offense.  "[N]ot all hierarchical distinctions among offenders matter for sentencing."  *Graham*, 162 F.3d at 278.  Mr. Abu Khatallah did not command UBJ or any of its former members on the night of the attacks, and jury's verdict supports this fact.  The government's evidence demonstrated that former members of UBJ were directly involved in the initial attack on the Mission.  If the jury believed that Mr. Abu Khatallah was commanding these individuals on the night of the attack, or as the PSR claims, "coordinated the actions of several coconspirators preceding the attack on the Mission," the jury would have convicted Mr. Abu Khatallah of the charges related to the initial attack.  Moreover, the initial attack is not the offense of conviction, and therefore the role adjustment cannot be based on that conduct.  A role adjustment would be appropriate only if Mr. Abu Khatallah had an aggravated role in the attack on the Mission after U.S. personnel evacuated.

The PSR also bases the application of the adjustment on a the unsupported finding that Mr. Abu Khatallah "supervised the plundering of sensitive information from the Mission."  PSR

at p.26.  This allegation is not supported by evidence.  Mr. Abu Khatallah did not "supervise" anyone.  In order to receive any adjustment under § 3B1.1, a defendant "must exercise some control over others."  *United States v. Smith*, 374 F.3d 1240, 1250 (D.C. Cir. 2004).  There is no evidence that Mr. Abu Khatallah exercised control over any participant in the offense with regard to the attack on the Mission after U.S. personnel evacuated.  Moreover, "supervising" others is not sufficient to establish the four-level organizer or leader adjustment, as the PSR suggests.  *See Graham*, 162 F.3d at 1185.

### D.  Applicable Guideline Sentencing Range

Using the base offense level for the offense of conviction, level 24, and without the adjustments for terrorism or a leading role in the offense, the applicable sentencing range for Counts One, Two, and Sixteen is 51 to 63 months.[2]

### V.    IMMIGRATION STATUS

Both the defense and the government objected to the language in the initial PSR regarding Mr. Abu Khatallah's immigration status.  *See* Government's Response to Presentence Investigation Report at 2-3.  Although language proposed by the government was added, the PSR still contains incorrect statements.  Specifically, in ¶ 64, the PSR states "the defendant is not legally in the United States," and "he may be amenable to arrest for immigration violations." As the government acknowledges, Mr. Abu  Khatallah was brought to the United States by force and lawfully admitted through the Special Benefit Parole program, at the request of the government.   While he has no legal status to remain in the United States after the completion of his sentence, he did not enter unlawfully, is not here unlawfully, and is not subject to arrest for

---

[2] If the Court does not dismiss Count Eighteen prior to sentencing, the mandatory 120-month term for Count Eighteen would be added for a total recommended sentencing range of 171 to 183 months.

any immigration violation.  The quoted language, therefore, should be stricken as it falsely suggests misconduct by Mr. Abu Khatallah.

### Conclusion

For the foregoing reasons, and such other reasons as may be presented at the hearing on these objections scheduled for May 23, 2018, Mr. Abu Khatallah respectfully submits that the Court should find that the PSR does not accurately state or describe the offenses of conviction and that the Guidelines calculations in the PSR are erroneous, and the Court should instruct the Probation Office to amend the PSR prior to the sentencing hearing scheduled for June 27, 2018.

Respectfully submitted,

A.  J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

MICHELLE M. PETERSON
MARY MANNING PETRAS
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

ERIC L. LEWIS (D.C. Bar #394643)
JEFFREY D. ROBINSON (D.C. Bar #376037)
WALEED NASSAR (D.C. Bar #992659)
LEWIS BAACH KAUFMANN
  MIDDLEMISS PLLC
1899 Pennsylvania Avenue, N.W., Suite 600
Tel:  (202) 833-8900
Fax:  (202) 466-5738
eric.lewis@lbkmlaw.com
jeffrey.robinson@lbkmlaw.com
waleed.nassar@lbkmlaw.com