UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AHMED SALIM FARAJ ABU KHATALLAH,<br><br>    also known as "Ahmed Abu Khatallah,"<br>    also known as "Ahmed Mukatallah,"<br>    also known as "Ahmed Bukatallah,"<br>    also known as "Sheik,"<br><br>    Defendant. | Case No. 14-cr-00141 (CRC) |

**MEMORANDUM OPINION**

Ahmed Salim Faraj Abu Khatallah was convicted of four charges related to the 2012 attack on a United States diplomatic compound in Benghazi, Libya. He has moved for a judgment of acquittal on one of these offenses: Count Eighteen of the superseding indictment, which charged a violation of 18 U.S.C. § 924(c). Abu Khatallah claims that his conviction cannot stand in light of the Supreme Court's recent decision in Sessions v. Dimaya, 138 S. Ct. 1204 (2018). The Court will deny his motion.

**I.    Background**

Abu Khatallah was charged with eighteen offenses related to the 2012 attacks in Benghazi. After a seven-week trial, the jury convicted him on four of the charges and acquitted him on all others.[1] One of his convictions was for using or carrying a semiautomatic assault

---

[1] The trial is summarized in this Court's recent opinion denying Abu Khatallah's motion for a mistrial. See Memo. Op. at 1–11, ECF No. 528 (June 15, 2018).

weapon "during and in relation to any crime of violence," in violation of 18 U.S.C. § 924(c)(1)(A).[2]  Section 924(c) defines a "crime of violence" as any felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Id. § 924(c)(3). Subsection (A) of this definition is commonly referred to as the "elements clause" (or sometimes the "force clause"). Subsection (B) is known as the "residual clause."

The jury was not required to specify which offenses it viewed as crimes of violence supporting Abu Khatallah's § 924(c) conviction. But it convicted him on three counts that, according to the jury instructions, qualified:

- Count 1: Providing material support to terrorists (a violation of 18 U.S.C. § 2339A carrying a maximum 15-year prison sentence);

- Count 2: Conspiring to do the same (also a violation of 18 U.S.C. § 2339A carrying a maximum 15-year sentence); and

- Count 16: Intentionally injuring a building within the special and maritime jurisdiction of the United States—namely, the U.S. Special Mission—where that building was a dwelling or where the life of a person was placed in jeopardy (a violation of 18 U.S.C. § 1363 carrying a maximum 20-year sentence)

Abu Khatallah moved for a judgment of acquittal at the close of the government's case and again after his case. Trial Tr. 5421, 5537–38 (Nov. 13, 2017 a.m.).  The Court reserved

---

[2] Section 924(c) imposes a minimum five-year sentence on a defendant who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The minimum penalty is steeper when the jury, as it did here, finds that the firearm is a "semiautomatic assault weapon." Id. § 924(c)(1)(B)(i).

judgment on the motion and submitted the case to the jury on November 20, 2017.  On November 28, the jury convicted Abu Khatallah on the four charges described above.

He now renews his motion[3] with respect to his § 924(c) conviction in light of the Supreme Court's April 2018 decision in Sessions v. Dimaya, 138 S. Ct. 1204.  Dimaya confronted a challenge to a different provision of the federal criminal code, 18 U.S.C. § 16, that defines "crime of violence" identically to § 924(c).  The challengers there argued that the provision's residual clause was unconstitutionally vague—that is, it did not provide fair notice of the conduct it prohibits and thus could not be applied without violating the Due Process Clause of the Fifth Amendment.  Id. at 1212.  The Supreme Court agreed.  See id. at 1216.

Abu Khatallah thus contends that, for the reasons stated by the Supreme Court in Dimaya, the same residual clause in § 924(c) is also void for vagueness.  And he claims that, without the residual clause, his conviction under § 924(c) cannot stand.  In his view, while his other convictions may have qualified as crimes of violence under the residual clause, none of them fall within the elements clause because they do not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A).

---

[3] Federal Rule of Criminal Procedure 29(c) provides that a motion for judgment of acquittal or renewal of such a motion must be made within fourteen days of a jury verdict.  But while Abu Khatallah's filing here is in styled as a renewed motion and was not filed within fourteen days of the jury's verdict, the filing is better understood as a memorandum supporting his timely renewed motion for judgment of acquittal.  Or, to the extent that it is an untimely renewal, the Court will nonetheless consider it because it was filed immediately after an intervening change in law that could render a conviction unconstitutional—a textbook case of "excusable neglect" justifying a failure to file it earlier.  See Fed R. Crim. P. 45(b)(1)(B); id. advisory committee note to 2005 amendments.

II. Analysis

    A. Abu Khatallah Has Not Waived the Argument that his § 924(c) Conviction Is Invalid

At the threshold, the government contends that Abu Khatallah waived any argument that the crimes charged in the indictment are not crimes of violence for purposes of § 924(c). It points to two missed opportunities for Abu Khatallah to have raised this argument, each of which it believes constitutes waiver.

First, the government claims that Abu Khatallah should have moved to dismiss the indictment's § 924(c) count as failing to charge an offense. See Fed. R. Crim. P. 12(b)(3)(B)(v); United States v. Eshetu, 863 F.3d 946, 952 (D.C. Cir. 2017) (explaining that a challenge to the constitutionality of a criminal statute "undoubtedly qualifies" as a proper ground for a motion to dismiss for failure to charge an offense under Rule 12). This argument can be quickly dispensed with. While the Federal Rules of Criminal Procedure do provide for waiver of arguments not timely raised in pretrial motions, the Rules allow courts to consider any defense or objection "if the party shows good cause." Fed. R. Crim. P. 12(c)(3). Good cause exists here. The deadline for pretrial motions in this case lapsed in August 2015. That predated Dimaya by two-and-a-half years. The government suggests that the Supreme Court decision on which Dimaya relied—Johnson v. United States, 135 S. Ct. 2551 (2015)—provided Abu Khatallah with a basis for challenging his § 924(c) charge before trial. Maybe so in the abstract. But Johnson dealt with statutory text different from § 924(c)'s and, under binding D.C. Circuit case law at the time, § 924(c)'s residual clause was constitutionally sound. See, e.g., United States v. Kennedy, 133 F.3d 53, 56–58 (D.C. Cir. 1998) (applying residual clause). Abu Khatallah's argument to the contrary would have almost certainly fallen on deaf ears, and thus good cause exists for his failure to raise that argument. Fed. R. Crim. P. 12 advisory committee note to 2014 amendments

4

(describing good cause as "a flexible standard that requires consideration of all interests in the particular case").

Alternatively, the government claims that Abu Khatallah waived his "crime of violence" argument by not objecting to the jury instruction that "[t]he crimes charged in Counts One through Seventeen are crimes of violence." The Court disagrees that this constituted waiver. The Court delivered jury instructions (1) shortly after the D.C. Circuit had reaffirmed the constitutionality of § 924(c)'s residual clause following the Supreme Court's decision in Johnson, see Eshetu, 863 F.3d at 955, and (2) before the Supreme Court in Dimaya called that ruling into question. Abu Khatallah could not have credibly argued that the jury instruction misstated current law, and surely his failure to raise an argument anticipating the Supreme Court's decision to change the law does not waive an argument relying on that change. Rather, Abu Khatallah correctly conceded that the charged crimes qualified as crimes of violence under the § 924(c)'s residual clause under then-binding law. And, in light of Dimaya, he is now able to argue for the first time that § 924(c)'s residual clause is unconstitutionally vague and that his conviction cannot stand without it.

  B.  Abu Khatallah's Conviction Under 18 U.S.C. § 1363 Is a Crime of Violence
      Under § 924(c)'s Elements Clause

That leads us to the first question on the merits: Does the Supreme Court's invalidation of § 16's residual clause in Dimaya mean that § 924(c)'s residual clause is also unconstitutionally vague? At first glance, the answer would appear to be an obvious "yes." The texts of the two residual clauses are identical, and both are components of criminal statutes that define the term

"crime of violence." But the matter is not settled in the D.C. Circuit.[4] In any case, this Court need not conclusively settle it because it ultimately concludes that Abu Khatallah's conviction under § 924(c) can stand even under § 924(c)'s elements clause.

To determine whether a particular predicate crime is a "crime of violence" under § 924(c)'s elements clause, the Court must use the "categorical approach." See Eshetu, 863 F.3d at 955. Under the categorical approach, the question is not whether Abu Khatallah *in fact* used, attempted, or threatened physical force against the person or property of another when committing the underlying offenses. See Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). Rather, the Court must look only to the elements of the crime—"the things the 'prosecution must prove to sustain a conviction'" and "what the jury must find beyond a reasonable doubt"—and decide whether those elements *necessarily* involved the requisite use, attempted use, or threatened use of physical force. Id. (quoting Black's Law Dictionary 634 (10th ed. 2014)).

In other words, the question is whether "the least of the acts criminalized" by the statute involves such force. Moncrieffe v. Holder, 569 U.S. 184, 191 (2013) (internal quotation omitted). Thus, one way for a defendant to establish that a crime does not fall within the

---

[4] The D.C. Circuit has directed supplemental briefing regarding the effect of Dimaya on its 2017 decision upholding § 924(c)'s residual clause against constitutional challenge. Order, United States v. Lovo, No. 15-3023 (D.C. Cir. May 21, 2018); see also United States v. Salas, 889 F.3d 681, 686 (10th Cir. 2018) (holding § 924(c)(3)(B) unconstitutionally vague in light of Dimaya); Davis v. United States, No. 16-8997, 86 U.S.L.W. 3573 (U.S. May 14, 2018) (summarily granting petition for certiorari, vacating decision, and remanding to Fifth Circuit for reevaluation, in light of Dimaya, of decision that applied § 924(c)(3)(B)). In its supplemental brief there (and before this Court) the government has not conceded that Dimaya renders § 924(c)(3)(B) void for vagueness; rather, it argues that courts should abandon the categorical approach when applying the residual clause and should instead require a jury to determine whether the defendant's particular conduct gave rise to a substantial risk that force would be used. See Corr. Supp. Br. of Appellee, Lovo, No. 15-3023 (D.C. Cir. June 6, 2018).

elements clause is to show that a person could be convicted of the crime despite not using, attempting, or threatening force against the person or property of another. But to succeed on that sort of argument, a defendant must do more than *hypothesize* conduct that would support a conviction. Rather, the defendant "must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007); see also Moncrieffe, 569 U.S. at 191 ("[F]ocus on the minimum conduct criminalized by the [relevant] statute is not an invitation to apply 'legal imagination' to the . . . offense." (quoting Duenas-Alvarez, 549 U.S. at 193)).

Applying these standards, the Court finds that Abu Khatallah's § 924(c) conviction can stand because one of his other offenses of conviction, 18 U.S.C. § 1363, categorically involves "the use, attempted use, or threatened use of physical force against the person or property of another." Section 1363 provides that:

> Whoever, within the special maritime and territorial jurisdiction of the United States, willfully and maliciously destroys or injures any structure, conveyance, or other real or personal property, or attempts or conspires to do such an act, shall be fined under this title or imprisoned not more than five years, or both, and if the building be a dwelling, or the life of any person be placed in jeopardy, shall be fined under this title or imprisoned not more than twenty years, or both.

So, at a minimum, to be convicted under § 1363 a defendant must have intentionally injured federal property, or have attempted or conspired to do so. The question is whether a defendant's injuring, attempting to injure, or conspiring to injure federal property necessarily means that he used, attempted, or threatened force against that property.

The short answer is yes. Injuring federal property categorically requires a use of force against the property of another. Likewise, an attempt to injure property categorically requires an

7

attempted use of force against the property of another.[5]  Abu Khatallah contends that, for two

reasons, the issue is much more complicated.  The Court disagrees with both contentions.

       1.  *"[T]he use, attempted use, or threatened use of physical force . . ."*

Abu Khatallah's first argument relies on the Supreme Court's decision in <u>Johnson v.

United States</u>, 559 U.S. 133 (2010), which interpreted the term "physical force" in a statute with

---

[5] Abu Khatallah does not contend that the fact that he could have been convicted under § 1363 for *conspiring* to injure property changes matters.  Even if the argument were not forfeited, it would not alter the Court's analysis.  The D.C. Circuit has held that so long as the "object" of the conspiracy—*i.e.*, its unlawful agreed-upon goal—fits within § 924(c)'s definition of a crime of violence, then the conspiracy crime also qualifies as a crime of violence.  That is true even if no violent overt act is necessary to support a conspiracy conviction.  <u>United States v. Kennedy</u>, 133 F.3d 53, 57–58 (D.C. Cir. 1998); <u>see also</u> <u>Eshetu</u>, 863 F.3d at 961 (Millett, J., concurring in part and concurring in the judgment) ("Under this court's precedent, by which this panel is bound, in a Hobbs Act conspiracy, we may look to the object of the conspiracy—either robbery or extortion—to determine if the conspiracy itself is a crime of violence.").

     Admittedly, the D.C. Circuit has taken this approach only implicitly.  <u>See</u> <u>Kennedy</u>, 133 F.3d at 57–58.  And it is not beyond doubt that, if confronted with the issue again, the Circuit would continue to focus on the object of the conspiracy—as opposed to the minimum conduct required to be a conspirator—when evaluating crimes under the *elements clause*, as opposed to under the residual clause.  The object of the conspiracy is clearly relevant under the residual clause: an agreement to commit a crime that (if completed) involves the use, attempt, or threat of force inherently creates a "substantial risk" that force will be used.  <u>See</u> <u>United States v. Elder</u>, 88 F.3d 127, 129 (2d Cir. 1996).  But as the majority of courts to address the issue have recognized, a person can agree to use force—and engage in an overt act in furtherance of that agreement—without ever actually using, attempting, or threatening force.  <u>See</u> <u>United States v. Gore</u>, 636 F.3d 728, 731 (5th Cir. 2011); <u>United States v. White</u>, 571 F.3d 365, 369 (4th Cir. 2009); <u>United States v. Fell</u>, 511 F.3d 1035, 1037 (10th Cir. 2007); <u>United States v. Juvenile Male</u>, 923 F.2d 614, 618 & n.7 (8th Cir. 1991).  Indeed, it appears that only one court of appeals avowedly focuses on the object of the conspiracy when evaluating crimes under the elements clause, and it does so based on a technical understanding of a criminal conspiracy as "subsum[ing] the elements" of the conspiracy's object.  <u>United States v. Preston</u>, 910 F.2d 81, 86 (3d Cir. 1990).  Nevertheless, Abu Khatallah has not argued that the possibility of conviction based on conspiracy renders § 1363 outside the scope of the elements clause.  And even if he had, this Court is bound by the D.C. Circuit's implicit holding on the issue—a holding recently endorsed in a concurrence even as to the elements clause, <u>see</u> <u>Eshetu</u>, 863 F.3d at 961 (Millett, J., concurring in part and concurring in the judgment).

some similarities to § 924(c). Specifically, Johnson dealt with the Armed Career Criminal Act ("ACCA"), which imposes penalties on gun-possession defendants who have multiple convictions for a "violent felony." 18 U.S.C. § 924(e)(1). ACCA's definition of violent felony, like § 924(c)'s definition of a crime of violence, includes a clause that covers crimes with "an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 924(e)(2)(B)(i). (Unlike § 924(c), ACCA's elements clause does not cover crimes against property. See id.)

The Supreme Court in Johnson refused to read ACCA's term "physical force" as capturing "even the slightest offensive touching"—*i.e.*, the sort of force that would support a common law battery conviction. 559 U.S. at 139. Rather, "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, *force capable of causing physical pain or injury* to another person." Id. at 140 (third emphasis added).

With Johnson's definition in hand,[6] Abu Khatallah contends that a conviction under § 1363 does not categorically require the use of "violent" physical force against property, and thus does not fall within the § 924(c)'s elements clause. He cites decisions from other circuits upholding convictions under § 1363 based on facts that, in his view, involved nonviolent

---

[6] Johnson's construction of the term "physical force" in ACCA applies to that term as it appears in § 924(c)(3)(A). Like ACCA, § 924(c) defines crimes that Congress has deemed violent; Johnson's reasons for requiring violent force are thus fully applicable to § 924(c). And the sole textual difference between the text of the two elements clauses is that § 924(c)'s, unlike ACCA's, encompasses force administered to property as well as people. It follows that, to qualify as a crime of violence under § 924(c)(3)(A)'s elements clause, an offense must categorically require the use, attempted use, or threatened use of "force capable of causing physical pain or injury to a person or injury to property." See United States v. Hill, 832 F.3d 135, 143–44 (2d Cir. 2016); see also Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 433 (1932) ("Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.").

9

exertions of force.  See, e.g., United States v. Nerius, 824 F.3d 29, 30 (3d Cir. 2016) (conviction for breaking the sprinkler head in an inmate's cell, causing the cell to flood); United States v. Cobble, No. 06-cr-93 (W.D. Ky. 2007) (conviction for pouring tar on the steps of a federal courthouse).

But these cases do not show that § 1363 can be violated using less force than that contemplated in Johnson.  The relevant question under Johnson is not whether the Court would describe all § 1363 convictions as "violent" in an intuitive sense.  Rather, Johnson's definition of physical force simply requires that all of the prohibited acts involve "force capable of causing physical injury."  559 U.S. at 140.  Tarring a courthouse or breaking a sprinkler, while not particularly brutal, each require that level of force against property.  United States v. Hill, 832 F.3d 135, 142 (2d Cir. 2016) (explaining that Johnson "did not . . . require that a particular quantum of force be employed or threatened to satisfy the physical force requirement"); see also United States v. Castleman, 134 S. Ct. 1405, 1416–17 (2014) (Scalia, J., concurring in part and concurring in the judgment) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result.").  Neither act is the sort of *de minimis* intrusion—like a trespassory but otherwise harmless touch—that the Supreme Court in Johnson viewed as outside the scope of ACCA's elements clause.[7]  Cf. Johnson, 559 U.S. at 138 (state battery crime committable through "*any* intentional physical contact, no matter how slight," did not categorically involve the use of physical force (internal quotation omitted)).

---

[7] For example, a defendant who entered a secured federal building at night and placed his hand on the wall may not have used "violent force" against property.  But the Court does not believe that defendant would have *injured* that property so as to fall within § 1363.

Abu Khatallah also pursues a related argument: that a crime requiring proof of *injury* to a structure does not necessarily imply that the defendant used *physical force* capable of causing that injury. To this end, he cites decisions holding that statutes criminalizing the causation of bodily injury—without any express requirement of proving a use, attempt, or threat of force against a person—are not crimes of violence under the elements clause. The Second Circuit, for example, held that third-degree assault under Connecticut law did not fall within the elements clause because a defendant who injures his victim "by guile, deception, or even deliberate omission" could be convicted of assault. Chrzanoski v. Ashcroft, 327 F.3d 188, 195–96 (2d Cir. 2003).

But these cases do not help Abu Khatallah. For one, while it might be true in the abstract that injury by deception or omission does not require "physical force," he cites no authority suggesting that a defendant could be convicted for injuring *property* using those sorts of means. Fanciful hypothetical violations of § 1363 resting on deception or inaction—whatever those might be[8]—are insufficient to show that the crime falls outside § 924(c)'s elements clause. See Duenas-Alvarez, 549 U.S. at 193. And to the extent that some courts have held that "indirect" applications of physical force fall outside the elements clause, a recent D.C. Circuit decision expressly forecloses that argument. United States v. Haight, No. 16-3123 (D.C. Cir. June 22, 2018) (slip op. at 13–14) (relying on Castleman, 134 S. Ct. 1405, for the principle that "so-called indirect violent force is still violent force"). Thus, a crime like § 1363—which has as an element

---

[8] Tricking someone into pulling a fire alarm and thereby causing sprinklers to flood a post office?

11

the intentional injury of property—categorically requires that the defendant use force capable of causing injury to that property.

### 2. "[A]gainst the . . . property of another."

Abu Khatallah raises one additional argument for the first time in his reply brief.[9] He begins with the fact that § 924(c)(3)(A) covers crimes only if they categorically involve force against the "property *of another*." Based on that language, at least two courts of appeals have held that arson statutes do not qualify as crimes of violence when defendants could be convicted under those statutes for burning their own property. See United States v. Salas, 889 F.3d 681, 683–84 (10th Cir. 2018) (federal arson statute not a crime of violence under § 924(c)); Jordison v. Gonzales, 501 F.3d 1134, 1135 (9th Cir. 2007) (California property-burning statute not a crime of violence under 18 U.S.C. § 16); see also Torres v. Lynch, 136 S. Ct. 1619, 1629 (2016) (agreeing, in dictum, that the "crime of violence" definition does "not reach arson in the many States defining that crime to include the destruction of one's own property").

Drawing on these cases, Abu Khatallah contends that a person could violate § 1363 by injuring or destroying *his own* property, and for that reason the crime does not categorically fall within § 924(c)'s definition of a "crime of violence." Section 1363, he explains, requires only that the damaged property be "within the special maritime and territorial jurisdiction of the United States." This term is defined in 18 U.S.C. § 7(9) to cover, as relevant here:

---

[9] Courts often treat arguments first raised on reply as forfeited. Taitz v. Obama, 754 F. Supp. 2d 57, 61–62 (D.D.C. 2010). Moreover, this particular argument would have better been raised before trial; both the elements clause and the residual clause require that the property be "of another," and thus Abu Khatallah could have contended before Dimaya that § 1363 does not qualify as a crime of violence under either clause. The Court will nevertheless confront Abu Khatallah's argument because the government had an adequate opportunity to respond to it at the Court's June 18, 2018 hearing.

(A) the premises of United States diplomatic, consular, military or other United States Government missions or entities in foreign States, including the buildings, parts of buildings, and land appurtenant or ancillary thereto or used for purposes of those missions or entities, *irrespective of ownership*, and

(B) residences in foreign States and the land appurtenant or ancillary thereto, *irrespective of ownership*, used for purposes of those missions or entities or used by United States personnel assigned to those missions or entities.

18 U.S.C. § 7(9) (emphasis added).[10]

Abu Khatallah seizes on the language "irrespective of ownership" and contends that § 1363 therefore allows for the possibility of conviction for destruction of one's own property. In his view, a defendant could own a foreign residence that is "used for purposes" of a U.S. consulate, 18 U.S.C. § 7(9)(B), and then intentionally damage that structure in violation of § 1363. In an effort to show that this possibility is more than theoretical, Abu Khatallah at the hearing introduced an exhibit showing that the Mission facilities were, in fact, leased to the United States by private owners. Def.'s Ex. S-12. He claims that, if either landowner had injured Mission property, he could have been convicted under § 1363 without having used force against the "property of another," 18 U.S.C. § 924(c)(3)(A).

---

[10] This definitional statute includes several other subsections under which property can fall within federal territorial jurisdiction, see id. § 7, but the above bases were the only ones on which the jury here was instructed, see Jury Instructions at 27–28; see also United States v. Abu Khatallah, 168 F. Supp. 3d 210, 215 (D.D.C. 2016) (in denying pretrial motion to dismiss Counts 16 and 17, explaining that the government at trial would need to prove that the Mission "fell within a certain class of buildings, 18 U.S.C. 7(9)(A)–(B)"). So to convict Abu Khatallah for violating § 1363, the jury necessarily found that the Mission fell within this limited part of the federal-territorial-jurisdiction statute—*i.e.*, within subsection 9. Thus, in analyzing whether § 1363 falls outside the crime-of-violence definition on the ground that a defendant could destroy his own property, the Court is permitted to use the "modified categorical approach": it may ignore the possibility that *other* subsections of § 7's definition of federal territorial jurisdiction supported Abu Khatallah's conviction. See Descamps, 570 U.S. 254, 261–62 (2013). The sole question is therefore whether a defendant who damaged property falling within 18 U.S.C. § 7(9), in violation of § 1363, categorically used physical force against the "property of another."

The Court accepts that a defendant could violate § 1363 by injuring a structure that he *owns*. But it does not follow that a defendant can violate § 1363 without injuring the "property of another." While there is scant authority on the meaning of that phrase in § 924(c), its legislative history suggests a broad understanding—one that covers all "property in which a person or government has an interest upon which the actor is not privileged to infringe without consent, whether or not the actor also has an interest in the property." S. Rep. No. 97-307, at 711.[11] A similarly broad definition made its way into the Model Penal Code, which explains in defining arson that "[p]roperty is that of another . . . if anyone other than the actor has a possessory or proprietary interest therein." Model Pen. Code § 220.1(4). And in states whose arson statutes retain the common-law requirement that the burned property be the property "of another," the requirement is generally met if the destroyed property contains "*any*" third-party interest, including a lease, State v. Bollinger, 352 P.3d 1003, 1008 (Kans. 2015) (emphasis added), and in some states even a mortgage, see, e.g., People v. Ross, 244 N.E.2d 608, 616 (Ill. 1968); see also 3 Wayne R. LaFave, Substantive Criminal Law § 21.3(d) (3d ed. 2017).

---

[11] The legislative history behind § 924(c)'s "crime of violence" definition is so complicated that it nearly defies summarization, but here goes: The just-quoted language was proposed as a general definition of the term "property of another" to appear in the Criminal Code Reform Act of 1981, S. 1630. See Sen. Rep. No. 97-307. That 1981 bill also proposed a definition of "crime of violence" that would apply throughout the criminal code. Id. at 457–58. The 1981 bill was never enacted, but the Senate report accompanying a later bill—known as the Comprehensive Crime Control Act of 1984—expressly indicates an intent to adopt the earlier bill's "crime of violence" definition. See Sen. Rep. No. 98-225, at 307. The Comprehensive Crime Control Act was ultimately enacted and created the "crime of violence" definition that applies to § 924(c). See Pub. L. No. 98-473, §§ 1001, 1005(a) (1984). And while the Comprehensive Crime Control Act did not include a definition of "property of another," it seems sensible to assume that it contemplated at least a similar definition of the term as the earlier bill from which it drew.

14

Moreover, the context of the phrase "property of another" supports, if not *demands*, that the term carry a broad meaning—one that captures offenses even if a defendant could be convicted for harming property he owns. Remember that § 924(c)(3)(A) defines a "crime of violence." Congress understandably wanted to exclude offenses from this definition that could be committed through pure self-harm; burning one's own property might be dangerous, but it is not categorically violent. But reading "property of another" restrictively would go a step further and, taken to its logical conclusion, would lead to a highly illogical result: A tenant who burns his rented rowhouse would have committed a crime of violence. A landlord who burns the rowhouse he rents out would not. Those offenses may be different in some respects, but they are equally *violent*. Why would Congress intend § 924(c) to distinguish between them?

In the Court's view, then, § 924(c)'s reference to "property of another" means property in which another party (other than the defendant) has a proprietary or possessory interest. That reading is consistent with the context, history, and purpose of the statutory phrase, as well as with the meaning given to it by the Model Penal Code and numerous states. Indeed, the Court is aware of no place where the phrase is used in the way Abu Khatallah suggests—*i.e.*, that a defendant *per se* cannot damage the "property of another" if he owns the property.

A statute is thus excludable from § 924(c) on the basis of ownership only if it could be violated by an owner who damages property in which he has *exclusive* interest. Under that reading, the only way Abu Khatallah could succeed on his argument is by showing that § 1363 could criminalize an owner's damage of wholly private property—that is, property in which another party does not have a right of control or possession. He has made no such showing. Rather, for property to fall within the special maritime and territorial jurisdiction of the United States under 18 U.S.C. § 7(9)—and thus to sustain conviction under § 1363—it appears that the

15

United States must hold *some* proprietary or possessory interest in the property. In other words, § 7(9) seems to require that the government have some right of possession or control over the property—akin to the lease in this case. See, e.g., United States v. Passaro, 577 F.3d 207, 216 (4th Cir. 2009) (holding that Afghan military base fell within § 7(9) where the "United States had retained control for nearly a year and a half . . . , maintaining a meaningful permanent presence to conduct significant military operations, which the Afghan government sanctioned").

True, the text of § 7(9)(B) *could* be read to cover residences privately and exclusively owned by "United States personnel" assigned to diplomatic missions. If those personnel destroyed houses that they exclusively owned, they admittedly would not have destroyed the "property of another" even under the Court's broad definition of that term.

But even accepting the "realistic probability" of that remote hypothetical, Duenas-Alvarez, 549 U.S. at 193, the Court doubts that § 7(9) could be stretched to cover it. These doubts are rooted partially in the legislative history of that subsection. Subsection 9 was added to the definition of "special maritime and territorial jurisdiction of the United States" fairly recently as part of the USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272 (2001). In the view of the House committee report, the language added in subsection 9 was aimed at a narrow problem—it sought to "make it clear that embassies and embassy housing of the United States in foreign states are included in the special maritime and territorial jurisdiction of the United States." H.R. Rep. No. 107-236, pt. 1, at 73–75. The report noted that in recent years the issue had divided courts and identified a prior Fourth Circuit decision that, in the committee's view, correctly resolved it. See id. That case, United States v. Erdos, 474 F.2d 157 (4th Cir. 1973), held that a U.S. embassy abroad fell within federal-territorial jurisdiction because it was "reserved or acquired for the use of the United States, and under the exclusive or concurrent

jurisdiction thereof," id. at 159 (quoting 18 U.S.C. § 7(3)).  In the Fourth Circuit's view, "[t]he test, as to property within or without the United States, is one of practical usage and dominion exercised over the embassy or other federal establishment by the United States government."  Id. The U.S. Embassy in Equatorial Guinea met Erdos's test notwithstanding the fact that the United States was not its fee-simple owner, see id. at 159–60, but the Fourth Circuit nowhere contemplated that federal-territorial jurisdiction could extend to wholly private property.  Indeed, another leading case—one relying on Erdos—held that § 7(3) covered a private building rented by the U.S. embassy for the use of its employees, but in doing so was careful to note that the building "was not [the employee's] private residence."  United States v. Corey, 232 F.3d 1166, 1177 (9th Cir. 2000).

To be sure, § 7(9) did not expressly codify the precise bounds of Erdos.  But reading § 7(9) to cover residences in which the United States has *no* possessory or proprietary interest would take statutory text written to solve a narrow problem (courts treating U.S. embassy property as outside U.S. territorial jurisdiction) and stretch it to its breaking point (to cover wholly private residences inhabited by U.S. personnel abroad).  In fact, it is unclear that such a reading would comport with international law, and "an act of [C]ongress ought never to be construed to violate the law of nations, if any other possible construction remains.'"  Murray v. The Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118 (1804) (Marshall, C.J.)).[12]

---

[12] "International law imposes limits on a state's 'jurisdiction to prescribe,' that is, its ability to render its law applicable to persons or activities outside its borders."  United States v. Rezaq, 134 F.3d 1121, 1133 (D.C. Cir. 1998); see Restatement (Third) of Foreign Relations Law §§ 401–402 (1987).  Section 7(9) in typical cases will satisfy international-law principles because diplomatic property purchased or leased by the United States is commonly understood to be within at least the "concurrent" territorial jurisdiction of the United States and therefore within its power to prescribe.  See Corey, 232 F.3d at 1178 (asking, with respect to property leased by embassy abroad, "whether the United States enjoys such control over the area that the

17

Section 1363 is therefore distinguishable from the statutes that courts have held fall outside of § 924(c)'s definition of "crime of violence." The latter statutes have no requirement that the property be that "of another" and thus could readily be used to prosecute individuals who burn their own property (say, for insurance money). See, e.g., 18 U.S.C. § 844(i) (covering "any building, vehicle, or other real or personal property used in interstate or foreign commerce"); Cal. Penal Code § 452(c) (covering any "structure" or "forest land"). By contrast, to the Court's knowledge § 1363 has never been applied to a defendant who has destroyed property in which he alone has exclusive rights and, as just explained, the Court seriously doubts that such a prosecution would even be *theoretically* possible given the text and history of 18 U.S.C. § 7(9). At the very least, there is no "realistic probability" that § 1363 will ever be applied to a defendant who damages property over which he has sole and exclusive ownership. Duenas-Alvarez, 549 U.S. at 193; see also Moncrieffe, 569 U.S. at 191 ("focus on the minimum conduct criminalized by the . . . statute is not an invitation to apply 'legal imagination' to the . . .

---

law should constructively regard it as United States territory"); Restatement, *supra*, § 402(1)(a). But if read to cover wholly private property—property over which the United States exerted no modicum of control—there would need to be some other basis supporting extension of U.S. jurisdiction. That's not a problem when the defendant is a U.S. national. Id. § 402(2). By its terms, however, § 7(9) applies not just where the defendant is a U.S. national, but also where the *victim* is a U.S. national. And at least for run-of-the-mill crimes like § 1363, the nationality of the victim would not seem sufficient to support U.S. jurisdiction consistent with the law of nations. Cf. Rezaq, 134 F.3d at 1133 (citing "passive personality principle" of jurisdiction over crimes against a state's nationals "by reason of their nationality," but noting that principle "has not been generally accepted for ordinary torts or crimes"); Restatement, supra, § 402 cmt. f (explaining "protective principle of jurisdiction" over "offenses directed against the security of the state" but citing "espionage" and "counterfeiting" as paradigmatic examples). So under the theory that statutes should be read so as to comply with the law of nations, § 7(9) should be interpreted to cover only property that is within U.S. territory. The Court does not see how private residences in which the United States has no proprietary or possessory interest could be considered within its "territory," even if that term is given a broad, functional definition.

offense"); United States v. Redrick, 841 F.3d 478, 484 (D.C. Cir. 2016) (rejecting hypotheticals as "too farfetched to give us pause").

\* \* \*

In short, Abu Khatallah's conviction under 18 U.S.C. § 1363 necessarily involved the use, attempted use, or threatened use of physical force against the property of another. It therefore qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(A). With no basis for overturning the jury's verdict on Count Eighteen, the Court will deny Abu Khatallah's renewed motion for judgment of acquittal (ECF No. 507). A separate order accompanies this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: June 26, 2018