UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :

      v.                :        14-cr-141 (CRC)

AHMED ABU KHATALLAH    :

### DEFENDANT'S MOTION FOR LEAVE TO APPEAR FOR RESENTENCING VIA VIDEO CONFERENCE

Mr. Ahmed Abu Khatallah, the defendant, through undersigned counsel respectfully moves this Honorable Court for leave to appear at his resentencing hearing via video conference. Mr. Khatallah's appearance by video conference will satisfy the requirement of Federal Rule of Criminal Procedure 43(a) that he appear for sentencing. Appearance by video conference also satisfies the public's interest and any legitimate government interest in a public proceeding. Moreover, Federal Rule of Criminal Procedure 43(c) explicitly recognizes that a defendant can waive appearance at sentencing without undermining the interests that the rule requiring appearance is designed to further. Given the facts of this case, and the applicable law, the Court can and should reject the government's request to subject Mr. Khatallah to the punishing experience of traveling between the Administrative Maximum Facility in Florence, Colorado (ADX Florence) and the District of Columbia. Requiring such travel, given Mr. Khatallah's explicit waiver of the right to be physically present during sentencing, would serve no legitimate purpose.

### FACTUAL BACKGROUND

On June 15, 2014, government agents seized Mr. Khatallah in Benghazi, Libya. After detaining him for two weeks, on June 28, 2014, government agents brought him to court for his

initial appearance, and the Magistrate Judge ordered him held pending trial. On July 2, 2014, the Attorney General authorized the imposition of Special Administrate Measures (SAMs) regarding Mr. Khatallah's detention. *See* Exhibit 1 (SAMs 2014). The SAMs require authorities to keep Mr. Khatallah separated from all other inmates and prohibit him from communicating with anyone with limited exceptions for attorney-client communications, one monitored telephone call to immediate family members per month, and one three-page letter per week to immediate family members. The Attorney General has reimposed these measures every year since 2014. *See* Exhibit 2 (SAMs 2023).

In 2014, the United States Marshal Service contracted with the Alexandria Detention Center in Virginia to hold Mr. Khatallah consistent with the SAMs while he awaited trial. On November 28, 2017, a jury convicted Mr. Abu Khatallah of conspiring to provide material support (Count One), providing material support (Count Two), maliciously destroying and injuring the United States Special Mission in Benghazi and placing lives in jeopardy (Count Sixteen), and using and carrying a firearm during a crime of violence (Count Eighteen). The jury found Mr. Khatallah not guilty of committing Counts One and Two in a manner that resulted in death, not guilty of brandishing or discharging the firearm in relation to Count Eighteen, and not guilty of the remaining counts, including the murders charged in relation to the attack on the Mission and all of the charges related to the attack on the nearby U.S. facility, known as the Annex. On June 27, 2018, the Court sentenced Mr. Khatallah to a 22-year term of incarceration, including concurrent 144-month terms of imprisonment on Counts One, Two and Sixteen, and the mandatory minimum consecutive term of 120 months on Count Eighteen.

Following his sentencing, the United States Marshal Services transferred custody of Mr. Khatallah to the Bureau of Prisons (BOP). BOP authorities initially transported Mr. Khatallah

to the United States Penitentiary in Canaan, Pennsylvania (USP Canaan), where he was held for approximately seven months, before he was transferred to ADX Florence. Consistent with the SAMs, throughout this journey, Mr. Khatallah was kept separated from all other prisoners.

When Mr. Khatallah was transferred to BOP custody, authorities seized his belongings, including legal papers. Once at USP Canaan, he was placed in a cell isolated from others and no accommodations were made to lessen the psychological impact of the isolation required by the SAMs. Mr. Khatallah does not speak English, making communication with the guards difficult. The guards were not professional and seemed to purposefully deprive Mr. Khatallah of necessities as a form a punishment based on their understanding of the offense of conviction—as an example, one guard would recite the Star-Spangled Banner while depriving Mr. Khatallah of a Halal meal or other necessity. When he arrived at USP Canaan, Mr. Khatallah's cell contained a metal bed frame with a mattress that was approximately one meter long, with nothing else. The following day he was given a used towel and half a bed sheet. He frequently was given meals that were not consistent with his religious beliefs, and he therefore went hungry. While at USP Canaan for approximately seven months, Mr. Khatallah remained isolated in his cell with a few exceptions, including once when he was taken outside for exercise but left in the cold for hours, once when his case manager had him removed to meet with the case manager and a psychologist, and once when the cell was searched. These conditions were stressful and had a severe negative impact on Mr. Khatallah's physical and mental health.

Mr. Khatallah continues to be detained at ADX Florence and subject to the SAMs. Because ADX Florence houses multiple prisoners subjected to SAMs, procedures there allow officials to permit Mr. Khatallah to have limited contact with a few other prisoners, and he is not held in total isolation. Currently, he is permitted to be outside of his cell during a one and half hour period each

day. During this time, he may eat and speak with three other prisoners. The conditions of confinement continue to be isolating, but they are somewhat less mentally taxing than total isolation. Moreover, the guards at ADX Florence are professional and accustomed to housing inmates convicted in high-profile cases. While the conditions are harsh, the guards do not appear to use aggressive tactics to purposefully increase the severity of incarceration.

On July 26, 2022, the District of Columbia Circuit remanded this matter for resentencing. The Court has scheduled an evidentiary hearing for June 27, 2024 and the resentencing hearing for September 26, 2024.

## **ARGUMENT**

Mr. Khatallah is not seeking to waive his appearance at that currently scheduled resentencing hearing. Rather, he is seeking to waive his physical appearance to avoid the punishing travel between ADX Florence and the District of Columbia and the inevitable return trip to ADX Florence. He asks that the Court permit him to remain at ADX Florence and appear by video from the facility with one of his attorneys traveling to ADX Florence and remaining with him during the hearing for consultation there, while another defense attorney appears in the courtroom for the public hearing. Counsel has confirmed with officials at ADX that they can accommodate such a procedure. This procedure will afford Mr. Khatallah his constitutional and statutory rights. It also affords the public and the government a public hearing. The procedure meets each of these interests without unnecessarily increasing the severity of Mr. Khatallah's punishment, and in conformity with applicable law.

      **A.    <u>Mr. Khatallah's appearance at his resentencing by video conference satisfies the presence requirement of Federal Rule of Criminal Procedure 43(a) and is consistent with D.C. Circuit law and prior occurrences in this District.</u>**

The government has argued that Mr. Khatallah is required to appear in person for the resentencing hearing ordered by the D.C. Circuit. *See* Government's Reply to Defendant's Response to Motion to Set Matter for Resentencing, ECF 576. This position is inconsistent with D.C. Circuit law, is not supported by Federal Rule of Criminal Procedure 43(a) or the authorities cited by the government, and is contrary to the government's arguments in other matters.

First, as confirmed by D.C. Circuit law, Rule 43(a) provides that a defendant must be present at sentencing, but does not define "presence," as requiring physical presence, or prohibit appearance by video. The D.C. Circuit has stated that appearance by closed circuit television—the equivalent of video conferencing—with the opportunity to consult with counsel can satisfy a defendant's right to appear and Rule 43. *See United States v. Washington*, 705 F.2d 489, 497 n.4 (D.C. Cir. 1983). In *Washington*, the D.C. Circuit noted that Rule 43 "does not define presence." *Id.* at 497. The court found that physical presence without the ability to hear *voir dire* is not sufficient to satisfy a defendant's right to be present during *voir dire* when a defendant seeks to exercise that right. *Id.* In doing so, the court noted: "When security is a problem or a dangerous defendant or a group of defendants is involved, the right to be present can be satisfied by use of closed-circuit television and the opportunity to consult with counsel, if such procedure is considered necessary by the trial court." *Id.* at 497 n.4.

Requiring the United States Marshals to move and house Mr. Khatallah in the District of Columbia area for the resentencing is neither necessary nor appropriate. Due to the requirements of the SAMs, moving Mr. Khatallah would present unnecessary complications for the Marshals and, as demonstrated by Mr. Khatallah's experience traveling to ADX Florence, would be unnecessarily physically and emotionally taxing on Mr. Khatallah, requiring long periods of

5

isolation. Solitary confinement alone causes "severe psychological damage." Allison Frankel *et al.*, *The Darkest Corner: Special Administrative Measures & Extreme Isolation in the Federal Bureau of Prisons*, Allard K. Lowenstein Int'l Human Rights Clinic, Yale Law School (Sept. 2017) ("Yale Report"), at 11.[1] "There is 'not a single published study of solitary or supermax-like confinement in which nonvoluntary confinement lasting for longer than 10 days…failed to result in negative psychological effects.'" *Id.*; *accord id*. at 1 (detailing the "scientific consensus" that solitary confinement "cause[s] permanent harm"). This damage includes "anxiety, panic, rage, loss of control, paranoia, and hallucinations" and "mirror the effects of other forms of torture." *Id.* at 11-12; *Davis v. Ayala*, 576 U.S. 257, 289 (2015) (Kennedy, J. concurring) (research "confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price"). Consistent with the D.C. Circuit's opinion in *Washington*, the need to avoid the risks and effects of moving Mr. Khatallah—both for him and the Marshals—supports a finding that video conferencing in this matter is sufficient to satisfy the requirements of Mr. Khatallah's presence at the resentencing, particularly given that Mr. Khatallah is requesting this procedure and waiving his personal appearance.

The government argues that the D.C. Circuit's opinion in *United States v. Lastra*, 973 F.2d 952, 955-56 (D.C. Cir. 1992), supports a finding that personal appearance is required for resentencing. ECF 576 at 2-3. It does not. In *Lastra*, the sentencing court denied the defendant her right to be present when the sentence was imposed, and the defendant appealed, invoking her rights

---

[1] https://ccrjustice.org/sites/default/files/attach/2017/09/SAMs%20Report.Final_.pdf. The administrative segregation required by the SAMs constitutes solitary confinement. *See, e.g.,* Alison Shames *et al.*, *Solitary Confinement: Common Misconceptions and Emerging Safe Alternatives*, Vera Inst. of Just. at 4-6 (May 2015) ("Whatever the label, the experience for the person is the same – confinement in an isolated cell (alone or with a cellmate) for an average of 23 hours a day with limited human interaction, little constructive activity, and in an environment that ensures maximum control over the individual."), https://www.vera.org/downloads/publications/solitary-confinement-misconceptions-safe-alternatives-report_1.pdf.

under Rule 43(a). 973 F.2d at 953. The D.C. Circuit discussed the importance of a defendant's constitutional right to be present embodied in Rule 43(a), both to serve the defendant's interests and to provide "a public sentencing in order to assure the appearance of justice and to provide a ceremonial ritual at which society pronounces its judgment." *Id.* at 955. The *Lastra* Court, however, did not address the manner of satisfying these interests. *Id.*

Mr. Khatallah does not dispute the importance of these interests or seek now to waive his right to appear. Mr. Khatallah's request applies only to the manner of his appearance, and *Lastra* does not hold that presence means physical appearance. If the Court grants this motion, he will appear for sentencing by video and will have the opportunity to consult with counsel throughout, with defense counsel physically present in the courtroom and at ADX Florence with Mr. Khatallah. If Mr. Khatallah chooses to speak on his own behalf, this procedure will allow him to do so. *See id.* (noting the importance of defendant's right to speak on his own behalf). This procedure will not deny the government a "public sentencing," as the government suggests. ECF 576 at 2. The proceedings requested by Mr. Khatallah will be open and public. His appearance by video will not deny the government or the public this second ceremonial ritual or limit the impact of the proceeding.

Second, the government relies on out-of-circuit authority that is factually inapposite. In support of its attempt to put Mr. Khatallah through the punishing journey to the District of Columbia and then back to ADX Florence, all while subjected to the onerous restrictions of the government's unilaterally imposed SAMs, the government cites Fourth, Seventh and Tenth Circuit cases. *See* ECF 576 at 3 (citing *United States v. Howell*, 24 F.4th 1138, 1143 (7th Cir. 2022); *United States v. Zander*, 705 F. App'x 707, 709–10 (10th Cir. 2017), *quoting United States v. Torres-Palma*, 290 F.3d 1244, 1248 (10th Cir. 2002); *United States v. Lawrence*, 248 F.3d 300,

7

303–04 (4th Cir. 2001); *United States v. Bethea*, 888 F.3d 864, 866–67 (7th Cir. 2018); *United States v. Navarrete*, 88 F.4th 672, 674 (7th Cir. 2023)). To the extent that these Circuits read "presence" in Rule 43 to mean "physical presence," they are contrary to the D.C. Circuit's opinion in *Washington*, which states that appearance can be satisfied by closed circuit television when necessary. *Washington*, 705 F.2d at 497 n.4.

In Addition, these cases (with the exception of *Howell*, addressed below) are factually inapposite because the issue presented was the use of video conferencing over the objection or without the consent of the defendant. *See Zander*, 705 F. App'x at 709–10 (10th Cir. 2017) (defendant appealed sentence imposed by video conferencing); *Torres-Palma*, 290 F.3d at 1248 (same); *Lawrence*, 248 F.3d at 303–04 (same); *Bethea*, 888 F.3d at 866–67 (defendant appealed hearing by video for plea and sentencing); *Navarrete*, 88 F.4th at 674 (failure to obtain consent to proceed by video under CARES Act not structural error warranting reversal)). The First Circuit distinguished these same cases on this same basis. *United States v. Rodriguez-Monserrate*, 22 F.4th 35, 44 (1st Cir. 2021) ("Because Rodriguez did affirmatively consent to videoconferencing, those cases are inapposite.").

Third, the procedure Mr. Khatallah asks the Court to employ here is one that has been used by other courts in this District to handle sentencings and resentencings. *See, e.g.*, *United States v. Paul Solofa*, 10-cr-250 (RBW) (June 8, 2012) (Judge Walton sentenced defendant with government and defense counsel present in courtroom and defendant along with second defense counsel present by video from BOP facility in Hawaii); *United States v. Deljuan Branham*, 03-cr-285 (TFH) (Feb. 9, 2009) (Judge Hogan resentenced defendant following remand with government and defense counsel present in courtroom and defendant along with second defense counsel present by video from BOP facility in New Jersey); *see also United States v. Marvin Smith*, 22-cr-220

(TSC) (Mar. 7, 2024) (Judge Chutkan permitted defendant to appear via video for resentencing following remand); *United States v. Jimmon Watson*, 19-cr-240 (ABJ) (Aug. 1, 2023) (Judge Jackson ruled on Rule 35 motion and resentenced via telephone conferencing because video conference was not available for BOP facility where defendant located); *United States v. Jose Macrino Emanuel Delatorre*, 18-cr-139 (RDM) (Mar. 4, 2024) (at request of defendant, Judge Moss revoked supervised release and imposed sentence of ten months without appearance of defendant).

Finally, the government's argument that Mr. Khatallah *must* be brought to the District of Columbia for resentencing is contrary to the position it has taken in other matters before this Court and other courts. In *Lastra* before the D.C. Circuit and the other cases discussed above, the government consistently argued that a defendant can waive his appearance at sentencing. Even as the government is arguing before this Court that Mr. Khatallah cannot voluntarily waive his physical presence in the courtroom in favor of appearance by video conference, the government simultaneously is arguing that a defendant must be limited to appearing by video conference even when he objects to the procedure. *See United States v. David B. Hearne*, 04-cr-130 (JEB), (Feb. 28, 2024, ECF 66) (Opp. to Gov. Motion to Not Allow Mr. Hearne to Appear In Person). In that case, the government is arguing that a defendant who is scheduled to appear before Chief Judge James E. Boasberg for an evidentiary hearing on a habeas petition (where witnesses will be confronted), should not be brought to the District of Columbia for the evidentiary hearing and, over the defendant's objection, should be required to appear only by video conferencing. The Court should give no weight to the government's inconsistent position here that physical presence is required and cannot be waived.

**B.      Federal Rule of Criminal Procedure 43(c) further supports the propriety of Mr. Khatallah's appearance by video conference at his resentencing.**

While Rule 43(a) generally requires a defendant to be present at sentencing, without specifying what constitutes presence, it recognizes that the constitutional and public policy interests furthered by a defendant's presence can be satisfied in certain circumstances in his absence. If the Court finds that appearance via video conferencing is not "presence" under Rule 43(a), this is such a case.

Rule 43(a) explicitly provides that the presence requirement can be waived. In particular, Federal Rule of Criminal procedure 43(c) provides:

(c) Waiving Continued Presence.

> (1) In General. A defendant who was initially present at trial, or who had pleaded guilty or nolo contendere, waives the right to be present under the following circumstances:

> * * *

>> (B) in a noncapital case, when the defendant is voluntarily absent during sentencing; or

> * * *

> (2) Waiver's Effect. If the defendant waives the right to be present, the trial may proceed to completion, including the verdict's return and sentencing, during the defendant's absence.

Consistent with Rule 43(c)(1)(B), Mr. Khatallah, who was present at trial and the original sentencing hearing, seeks to voluntarily absent his physical presence at the resentencing hearing.

The D.C. Circuit has not addressed the issue of waiver under Rule 43(c)(1)(B), but opinions from other circuits support a finding that the procedure requested by Mr. Khatallah is permissible. The Second Circuit has held that where, as here, the defendant consents, sentencing by video conferencing is permissible under Rule 43. *See United States v. Sealed Defendant One*, 49 F.4th 690, 700 (2d Cir. 2022) (defendant's right to be physically present at sentencing is waivable). The

First Circuit has suggested the same. *See United States v. Rodriguez-Monserrate*, 22 F.4th 35, 44 (1st Cir. 2021) (noting that Rule 43 provides for waiver when defendant "voluntarily absent" and "it is by no means clear that a defendant could not opt to appear by videoconference, rather than not at all as permitted by the rule"); *see also United States v. Koch*, 783 Fed. Appx. 218, 222-23 (3rd Cir. 2019) (no error in proceeding by video after defendant disrupted sentencing proceedings); *accord United States v. Csiki*, No. 20-1653, 2021 WL 2935360, at *2 (6th Cir. 2021) (defendant waived right to challenge district court's finding that he properly consented to sentencing by videoconference). Although in *Howell*, the Seventh Circuit held that physical presence is required to satisfy Rule 43, the court also recognized that Rule 43(c) provides for exceptions, as it had previously recognized in *Bethea*. *See Howell*, 24 F.4th at 1141, 1143; *see also Bethea*, 888 F.3d at 866 n.3 (defendant can waive presence at sentencing pursuant to Rule 43(c)(1) if he was present either at a plea hearing or start of trial). Although the Seventh Circuit suggested that voluntarily absenting oneself includes only a waiver that occurs "when a defendant flees or adamantly refuses to be transported peacefully to the sentencing hearing," *Howell*, 24 F.4th at 1143, but that finding is nonsensical. Limiting the definition of "voluntarily absent" for in-custody defendants to circumstances when a defendant refuses to be transported peacefully would encourage defendants to be disruptive and give non-peaceful defendants a right to waive appearance that is not afforded to peaceful defendants.

11

**CONCLUSION**

For the reasons set forth above, Mr. Abu Khatallah respectfully seeks leave to voluntarily absent his physical presence from the sentencing hearing and appear by video conferencing using the outlined procedure.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, NW, Suite 550
Washington, DC 20004
202-208-7500, ext. 5109
Mary_Petras@fd.org

JEFFREY D. ROBINSON (DC Bar No. 376037)
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1050 K Street, NW, Suite 400
Washington, DC 20001
Telephone: 202-833-8900
Jeffrey.Robinson@lbkmlaw.com

Dated: March 28, 2024        *Counsel for Ahmed Abu Khatallah*