**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| v. | : | **Crim. No.: 14-141 (CRC)** |
| | : | |
| | : | |
| **AHMED SALIM FARAJ ABU** | : | |
| **KHATALLAH,** | : | |
| | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO**
**PRECLUDE THE PRSESENTATION OF NEW EVIDENCE AT HIS RESENTENCING**

The United States of America, hereby, opposes defendant's motion to preclude the introduction of new evidence at his resentencing.  ("Def. Mot." (ECF # 586)).

**I.     Introduction**

It is important for Courts to have wide access to evidence, when imposing a sentence:

> But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.

*Williams v. People of State of N.Y.*, 337 U.S. 241, 246 (1949); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").  The government seeks to present two categories of new evidence at the resentencing:  (1) cellular site data regarding the location of

cellular towers involved with the transmission of defendant's telephone calls on September 11, 2012 (this data will further establish the time that the defendant arrived at the Mission), and (2) information provided to the FBI by a Libyan national in 2020, regarding the defendant's planning of and involvement in the attacks on both the Mission and the Annex, on September 11-12, 2012.

The Court is not prohibited from considering this new evidence. First, despite the exercise of due diligence, the new evidence was not available at the original sentencing; therefore, receipt of the evidence would not violate the mandate rule. Second, while some of the new evidence constitutes hearsay, the Confrontation Clause, as interpreted by *Crawford v. Washington*, 541 U.S. 36 (2004), does not preclude the consideration of hearsay at sentencing. Last, most of the new evidence does not implicate conduct for which the defendant was acquitted, but, to the extent that it does, such evidence is permissible for sentencing purposes. In sum, at resentencing, the Court should consider the new evidence being offered by the government.

## II.   Procedural Posture

On October 14, 2014, the grand jury returned an 18-count superseding indictment. ECF # 19. After a seven-week trial, on November 28, 2017, the jury found the defendant guilty on four counts: Counts 1 and 2 for conspiring to provide material support to terrorists and for providing that support, Count 16 for destroying a building, "that is, the U.S. Special Mission," within the U.S. "special maritime and territorial jurisdiction," and Count 18 for carrying a semiautomatic weapon during a crime of violence. For Counts 1 and 2, the jury made special findings that the defendant was not guilty of conduct "resulting in death." The defendant was acquitted of Counts 3–15 and Count 17. *See* Verdict Form, ECF # 488. On June 27, 2018, the defendant was sentenced as follows: a term of 144 months' incarceration for Counts 1, 2, and 16, to run concurrently with

each other and a term of imprisonment of 120 months on Count 18, to be served consecutively to Counts 1, 2, and 16.  For a total term of incarceration of 22 years.  *See* Judgment, ECF # 547, at 3.

The defendant appealed his conviction, and the government cross-appealed the sentence imposed.  On July 26, 2022, the D.C. Circuit affirmed the conviction and remanded for resentencing. *United States v. Khatallah*, 41 F.4th 608, 651 (D.C. Cir. 2022).  The D.C. Circuit denied defendant's request for rehearing en banc on December 20, 2022, *United States v. Abukhatallah*, No. 18-3041, 2022 WL 17852617, at *1 (D.C. Cir. Dec. 20, 2022), and, on June 26, 2023, the Supreme Court denied defendant's petition for writ of certiorari.  *Khatallah v. United States*, __ U.S. __, 143 S. Ct. 2667 (2023).  Resentencing is scheduled for September 26, 2024. ECF # 579.

## III.    Defendant's Criminal Conduct[1]

On September 11, 2012, members of extremist militias, armed with AK-47s, rocket-propelled grenades, mortars, and other weapons, attacked the United States Special Mission and Annex in Benghazi, Libya.  The terrorists quickly overwhelmed the small group of Americans at the Mission and then burned multiple buildings inside the compound.  After several Americans escaped to the nearby Annex, a clandestine CIA facility, the militants assaulted that compound as well, using a precision mortar attack to strike within its fortified walls.  Four Americans were killed during the attacks: Sean Smith, Glen Doherty, Tyrone Woods, and Ambassador J. Christopher Stevens, the first American ambassador to be murdered in the line of duty in decades.

The defendant, the self-proclaimed founder and commander of one of the extremist

---

[1]      Recognizing the Court's familiarity with this case, *see, e.g.*, *United States v. Khatallah*, 313 F. Supp. 3d 176, 181-85 (D.D.C. 2018), the government does not recite all the details of defendant's conduct here.

militias, planned and led the attack.  During the attack on the Mission, the defendant, who was armed with an assault rifle, was caught on surveillance video inside the compound directing his confederates as they rifled through the Mission's security office and removed sensitive items, including a map containing coordinates for the Annex.  After the attack, the defendant expressed his disappointment that more Americans had not been murdered, declaring that he had "intended then to kill everybody there."

## IV.    New Evidence

The government offers two categories of new evidence at the resentencing in this matter: (1) cellular site data regarding the location of cellular towers involved with the transmission of defendant's telephone calls on September 11, 2012 (this data will further establish the time that the defendant arrived at the Mission), and (2) information provided by a Libyan national to the FBI in 2020, regarding the defendant's involvement with the attacks on both the Mission and the Annex, on September 11-12, 2012.  Despite the exercise of due diligence, neither of these categories of evidence was available to the government at the original sentencing.

First, with respect to the cellular site information:  pertinent cellular site information "was provided to the United States government by various intelligence sources."  *See* Def. Ex. 195. Some of that information was made available to the defendant at the time of trial.  The government did not, however, have – at the time of either trial or original sentencing  –  the ability to introduce into evidence reliable cellular site information of the type that we intend to present at resentencing: the location of the cellular towers that were involved with the transmission defendant's telephone

calls during the time of the attack on the Mission.  While that data was collected by OpenCelliD[2] in December 2016, the prosecution team in this matter was unaware of and did not access that information before May 2019.  (That was also the first time, to our knowledge, that the FBI as a whole accessed the information.)  OpenCelliD is not a resource regularly accessed by or even known to FBI agents.  The OpenCelliD information was brought to the prosecution team's attention by a unit chief in the FBI's Cellular Analysis Survey Team ("CAST").

Second, with respect to the information from a Libyan national regarding the defendant's involvement in the planning and execution of the attack on the Mission and Annex:  the government first learned of the witness in December 2019 and interviewed him in early 2020.  This witness provided reliable information that the defendant was intimately involved in planning the September 11, 2012 attack on the Mission, participated in that attack, and provided crucial data for executing the mortar attack on the Annex (data the defendant had obtained from the Mission).

## V.   The Court is not prohibited from receiving the new evidence offered by the government.

None of the defendant's arguments against the submission of the new evidence withstands scrutiny.  The new evidence offered by the government neither (1) violates the mandate rule; (2) violates the Confrontation Clause; nor (3) implicates acquitted conduct (for the most part), and, to the extent that it does, such evidence may be considered at sentencing.

## A.   Parties are permitted to present new evidence at a resentencing, if, despite the exercise of due diligence, the evidence was unavailable at the original sentencing.

The D.C. Circuit remanded this matter for resentencing without express instructions

---

[2]    OpenCelliD is a non-governmental, collaborative community project that collects GPS positions of cellular towers and their corresponding location area identity.

regarding the issues to be considered.  Judgment, App. Doc. # 1956409; *see also United States v. Khatallah*, 41 F.4th 608, 651 (D.C. Cir. 2022) ("For that reason, on the government's cross appeal, we reverse and remand for resentencing.").  In *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995), the D.C. Circuit held that the government could not offer new evidence at resentencing after remand, unless the government's failure to provide the evidence at the original sentencing was "explained" or "justified" by "special circumstances."  *See United States v. Whren*, 111 F.3d 956, 959 (D.C. Cir. 1997) ("We did hold in *Leonzo* [citation omitted], that upon remand the Government could not offer new evidence in support of the sentencing level for which it had unsuccessfully argued at the original sentencing hearing.  *Absent special circumstances justifying the Government's initial failure to carry its burdens of production and of persuasion*, we saw 'no reason why it should get a second bite at the apple.'") (emphasis added).  Citing *Leonzo*, among other cases, the Second Circuit has explained, "where special circumstances make the prohibition on new evidence unfair, the district court may admit it."  *United States v. Archer*, 671 F.3d 149, 168 (2d Cir. 2011) (allowing presentation of new evidence at resentencing, "where the evidence was, for a good reason, unavailable" at the original sentencing).

Accordingly, the government is permitted to present new evidence at the resentencing if "special circumstances" exist that would make it unfair to preclude the evidence.  The unavailability of the new evidence, despite the exercise of due diligence, at the time of the original sentencing constitutes "special circumstances" providing for receipt of the new evidence at resentencing.  *See, e.g.*, *United States v. Lassiter*, 96 F.4th 629, 635 (4th Cir. 2024) (at resentencing, government may present "significant new evidence, not earlier obtainable in the exercise of due diligence"); *United States v. Dutch*, 978 F.3d 1341, 1345–46 (10th Cir. 2020)

("exceptional circumstances include . . . significant new evidence that was not obtainable earlier

through due diligence"); *United States v. Villalobos*, 879 F.3d 169, 172 (5th Cir. 2018) ("'special

circumstances' . . . include . . . where the evidence was, for a good reason, unavailable.'"); *cf.*

*McLane v. Haaland*, No. 12-CV-1397 (CRC), 2022 WL 782409, at *2 (D.D.C. Mar. 15, 2022) (in

another context, this Court determined that justice requires the presentation "of new evidence not

previously available").[3]

   First, with respect to the cellular site information:  pertinent cellular site information "was

provided to the United States government by various intelligence sources."  *See* Def. Ex. 195.

Some of that information was made available to the defendant at the time of trial.  The government

did not, however, have – at the time of either trial or original sentencing  –  the ability to introduce

into evidence reliable cellular site information of the type that we intend to present at resentencing.

That data was collected by a private entity, OpenCelliD, in December 2016, but the prosecution

team in this matter did not access that information before May 2019 (approximately 11 months

after the sentencing).  The exercise of due diligence cannot require the government to be aware of

---

[3]      Citing *United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013), the defendant argues that "new evidence" means – exclusively – evidence that did not exist at the time of the original sentencing.  *See generally* Def. Mot. at 1, 2, 5-10.  His argument fails because it ignores the *Leonzo* line of cases, cited above, holding that new evidence also includes evidence that existed at the time of the original sentencing, but, despite the exercise of due diligence, was not available.

         The *Blackson*-court's opinion does not mention *Leonzo*.  Clearly, *Blackson* did not overrule *Leonzo*; nor could it.  *See, e.g., United States v. Eshetu,* 898 F.3d 36, 37 (D.C. Cir. 2018) ("one panel cannot overrule another"). "[The authority to overrule a panel decision] may be exercised only by the full court, either through an in banc decision ... or pursuant to the more informal practice adopted in *Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981)." *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc).  "[D]istrict judges, like panels of this court, are obligated to follow controlling circuit precedent until either we, sitting en banc, or the Supreme Court, overrule it." *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997); *see also Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 209 F. Supp. 3d 77, 85 (D.D.C. 2016) (recognizing district court's obligation to follow controlling circuit precedent).

everything that is posted on the internet.[4]  Second, with respect to the information obtained from a Libyan national regarding the defendant's involvement in the planning and execution of the attack on the Mission and Annex:  the government first learned of the witness's information in December 2019 and did not interview the witness until 2020 (nearly two and half years after the sentencing).

**B.      Presentation of new evidence at resentencing would not violate the Confrontation Clause.**

The defendant claims that presentation of hearsay at resentencing would violate the Confrontation Clause.  Def. Mot. at 12-15.  This claim is based on a misreading of *United States v. Bras*, 483 F.3d 103, 109 (D.C. Cir. 2007), which actually holds:

> *Crawford* was a case about the right to confrontation *at trial*.  Nothing in *Crawford* suggests that the Court intended to overturn its precedents permitting the use of hearsay at sentencing. We are certainly not at liberty to do so.[5]  . . . We therefore reject Bras' challenge, and we join our sister circuits in holding that nothing in *Crawford* or *Booker* "alter[s] the pre-*Crawford* law that the admission of hearsay testimony at sentencing does not violate confrontation rights."

---

[4]      By analogy, even in the context of exculpatory information, courts do not hold the government responsible for information in the possession of private entities.  *See, e.g., United States v. Warren*, 782 F. App'x 466, 471 (6th Cir. 2019) (affirming the denial of a defense request information held by a private party); *United States v. Gray*, 648 F.3d 562 (7th Cir. 2011) (In Medicaid fraud prosecution, court rejected claim government violated *Brady* by failing to disclose in advance of trial certain timestamp data extracted from data belonging to company hired by the state to process Medicaid billing.)

[5]      The United States Supreme Court has long held that the use of hearsay at sentencing does not violate due process.  *See, e.g., Williams v. Oklahoma*, 358 U.S. 576, 584 (1959); *Williams v. New York*, 337 U.S. 241, 246-51 (1949) (citing with approval "the 'age-old practice of seeking information from out-of-court sources to guide [a court's] judgment toward a more enlightened and just sentence.'").

*Id.* at 109 (emphasis in original, citations omitted).[6]

The courts of appeals are unanimous in holding that *Crawford* did not alter the rule that the Confrontation Clause does not bar the use of hearsay at sentencing hearings.  *See, e.g., United States v. Figaro-Benjamin*, No. 21-1749, 2024 WL 1867442, at *2 (1st Cir. Apr. 30, 2024) ("Just as axiomatic is the principle that defendants do not ordinarily enjoy a Sixth Amendment right to confrontation at sentencing."); *United States v. Sheridan*, 859 F.3d 579, 584-85 (8th Cir. 2017) (same); *Smith v. Ryan*, 823 F.3d 1270, 1279 (9th Cir. 2016) (same); *United States v. Powell*, 650 F.3d 388, 392-93 (4th Cir. 2011) ("In holding that the Confrontation Clause does not apply at sentencing, we join every other federal circuit court that hears criminal appeals."); *United States v. Paull*, 551 F.3d 516, 527 (6th Cir. 2009) ("*Crawford* dealt only with the content of what the Confrontation Clause requires and not the scope of when it applies. . . . T[he] approach of leaving Crawford's Confrontation Clause rule where it is found [– at trial only –] has been adopted by every court of appeals to consider the decision's implication for hearsay in sentencing hearings."); *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007) ("*Crawford*, however, never applies its rule to sentencing; nowhere does the decision refer to sentencing hearings."); *United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006) (confrontation right as defined by *Crawford* does not apply at sentencing hearing); *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005)

---

[6]     While the introduction of hearsay at sentencing does not violate the Confrontation Clause, obviously, it must be "reliable."  *Id.*; *see also* U.S.S.G. §6A1.3, comm. ("Reliable hearsay evidence may be considered," at sentencing.).  The government anticipates that the reliability of the hearsay will be established at the hearing.  We note that this is the same process that the Court followed at the original sentencing.  *See* Sent. Tr. June 4, 2018, at p. 4-53 (Agent Clarke providing hearsay testimony from an interview that he had conducted in Libya).  In any event, of course, the Court will decide what – if any – weight to ascribe to the hearsay offered.

("*Crawford* dealt with trial rights and we see no reason to extend *Crawford* to sentencing proceedings. The right to confrontation is not a sentencing right.").[7]

## C.    The Court may consider acquitted conduct at sentencing.

As the Court has already noted, acquitted conduct may be considered at sentencing.  Sent. Tr. at 53 ("it would be error for me to completely disregard acquitted conduct in calculating the advisory sentencing guidelines range"); *see also United States v. Watts*, 519 U.S. 148, 156 (1997) ("We therefore hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."); *United States v. Boney*, 977 F.2d 624, 636 (D.C. Cir. 1992) ("We will, therefore, leave the Ninth Circuit in isolation on this issue and join, instead, the other ten circuits in holding that Sentencing Guidelines allow the use in sentencing of conduct underlying acquitted counts.").

Nevertheless, the Court need not wade into these waters.  The defendant's objection to the consideration of acquitted conduct at his resentencing is a red herring.  Det. Mot. at 10-12.  None of the new evidence that the government seeks to present at resentencing goes exclusively to establishing conduct for which the defendant was acquitted.  Specifically, the cellular site information establishing the time of the defendant's arrival at the Mission on September 11, 2012, does not implicate acquitted conduct at all.[8]  Second, the information obtained from the Libyan

---

[7]    Likewise, the general evidentiary proscription against hearsay does not apply to sentencing hearings.  Fed. R. Evid. R. 1101(d)(3).

[8]    The D.C. Circuit has rejected defendant's claim that evidence regarding the initial attack on the Mission necessarily implicates acquitted conduct (Def. Mot. at 4, n.1).  *Khatallah*, 41 F.4th at 629 ("The jury could have found that Khatallah was vicariously responsible for the first wave of the attack on the Mission where American lives were in danger but was not responsible for either the deaths that resulted from the first wave or the subsequent attack on the Annex.).

national primarily addresses defendant's role in planning and conducting the attack on the Mission. And it also contains a component regarding the defendant's role in providing coordinates for the mortar attack on the Annex.

At bottom, receipt of the proffered new evidence does not implicate any constitutional prohibition.

**VI.     Conclusion**

As set forth above, there is no legal prohibition to the Court considering at resentencing the new evidence offered by the government.  In light of the magnitude of this matter – the first time ever that a defendant accused of killing an ambassador has stood trial – it is especially important to apply the doctrine that, when determining a sentence, the Court should consider all appropriate evidence.  The Court should, therefore, receive the new evidence offered by the government.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

_____/s/_____
John Crabb Jr.
Assistant United States Attorney
N.Y. Bar No. 2367670

Michael C. DiLorenzo
Special Assistant U.S. Attorney
MD Bar No. 931214 0189

United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1794
john.d.crabb@usdoj.gov