UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No.: 14-141 (CRC) |
| | : | |
| AHMED SALIM FARAJ ABU KHATALLAH, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESENTENCING MEMORANDUM**

The United States of America, hereby, submits this memorandum in support of its recommendation for the resentencing of the defendant.[1]

**I.   Introduction**

The defendant, having been convicted of committing heinous acts of terrorism, stands for resentencing. He is an unrepentant terrorist. He not only participated in a murderous attack on an American diplomatic facility; he also organized and led the attack. The defendant committed these acts of terrorism, including conspiring with and providing material support to the very terrorists who murdered four Americans, one of whom was the incumbent U.S. Ambassador, and destroyed a State Department diplomatic facility and a CIA Annex in Benghazi, Libya – because of his deep-seated animus toward America. At resentencing, the defendant should, therefore, be sentenced at the high end of his Guidelines sentencing range.

Even if the Court were to disregard the defendant's acquitted conduct entirely, the

---

[1] The government incorporates by reference its original sentencing memorandum submitted in this case. [ECF # 533].

defendant's Guidelines sentencing range is still 30 years to life.  *United States v. Khatallah*, 41 F.4th 608, 649 (D.C. Cir. 2022).[2]  All the relevant Section 3553(a) sentencing factors support the imposition of a Guidelines sentence:  "Every [sentencing] factor discussed by the district court other than acquitted conduct either supported imposition of a sentence within the Guidelines range or was a mixed bag."  *Id.* at 649 (the District Court "strongly implie[d] that the other Section 3553(a) factors were a wash, and but for the jury's acquittals, the [Court] would have sentenced Khatallah consistent with the Guidelines' recommendation of a life sentence.").

Based on the severity of his crimes and his utter lack of remorse, the government continues to believe that the defendant deserves a life sentence.  We understand that the Court previously sentenced the defendant to 10 years' imprisonment on Count 18 (to be served consecutively to the other sentences), which is the only count of conviction carrying a potential sentence of life.  Accordingly, if the Court once again imposes the mandatory minimum 10-year sentence for Count 18, the government asks that the Court impose consecutive statutory maximum sentences for Counts 1, 2, and 16 – for a total of 50 years' imprisonment.  This would result in a total sentence of 60 years' imprisonment, which is within the sentencing range prescribed by the Guidelines.

**II.     Procedural Posture**

On October 14, 2014, the grand jury returned an 18-count superseding indictment.  [ECF # 19]  After a seven-week trial, on November 28, 2017, the jury found the defendant guilty on four counts:  Counts 1 and 2 for conspiring to provide material support to terrorists and for providing that support; Count 16 for destroying a building, "that is, the U.S. Special Mission,"

---

[2]     *See* U.S.S.G. § 2K1.4(a) (base offense level 24); § 3B1.1(a) (+4 for leadership); § 3A1.4(a) (+12 for terrorism); § 3A1.4(b) (criminal history category VI); ch. 5, pt. A (sentencing table) (range of 360 months to life).

within the U.S. "special maritime and territorial jurisdiction"; and Count 18 for carrying a semiautomatic weapon during a crime of violence. For Counts 1 and 2, the jury made special findings that the defendant was not guilty of conduct "resulting in death." The defendant was acquitted of Counts 3–15 and Count 17. *See* Verdict Form. [ECF # 488] On June 27, 2018, the defendant was sentenced as follows: a term of 144 months' incarceration for Counts 1, 2, and 16, to run concurrently with each other and a term of imprisonment of 120 months on Count 18, to be served consecutively to Counts 1, 2, and 16; for a total term of incarceration of 22 years. *See* Judgement, at 3. [ECF # 547]

The defendant appealed his conviction, and the government cross-appealed the sentence imposed. On July 26, 2022, the D.C. Circuit affirmed the conviction, but, having found that the defendant's "sentence [was] substantively unreasonably low in light of the gravity of his crimes of terrorism" the court reversed the sentence and remanded for resentencing. *Khatallah*, 41 F.3d at 617. The D.C. Circuit denied the defendant's request for rehearing en banc on December 20, 2022, *United States v. Abukhatallah*, No. 18-3041, 2022 WL 17852617, at *1 (D.C. Cir. Dec. 20, 2022), and, on June 26, 2023, the Supreme Court denied the defendant's petition for writ of certiorari. *Khatallah v. United States*, __ U.S. __, 143 S. Ct. 2667 (2023).

## III. Defendant's Criminal Conduct[3]

On September 11, 2012, members of extremist militias, armed with AK-47s, rocket-propelled grenades, mortars, and other weapons, attacked the United States Special Mission and Annex in Benghazi, Libya. The terrorists quickly overwhelmed the small group of Americans at

---

[3] Recognizing the Court's familiarity with this case, *see, e.g.*, *United States v. Khatallah*, 313 F. Supp. 3d 176, 181-85 (D.D.C. 2018) (summarizing trial evidence), the government does not recite here all the details of the defendant's criminal conduct. *See also Khatallah*, 41 F.3d at 617-620 (same).

3

the Mission and then burned multiple buildings inside the compound. After several Americans escaped to the nearby Annex, a clandestine CIA facility, the militants assaulted that compound as well, using a precision mortar attack to strike within its fortified walls. Four Americans were killed during the attacks: Sean Smith, Glen Doherty, Tyrone Woods, and Ambassador J. Christopher Stevens, the first American ambassador to be murdered in the line of duty in decades.[4]

The defendant, the self-proclaimed founder and commander of one of the extremist militias involved in the attack, planned and led the attack. During the attack on the Mission, the defendant, who was armed with an assault rifle, was caught on surveillance video inside the compound directing his followers as they rifled through the Mission's security office and removed sensitive items, including a map containing coordinates for the Annex. After the attack, the defendant expressed his disappointment that more Americans had not been murdered, declaring that he had "intended then to kill everybody there."

## IV.   Statutory Penalties

The four counts for which the defendant was convicted carry the following statutory penalties:

Count 1:  Providing Material Support to Terrorists, in violation of 18 U.S.C. § 2339A, carries a maximum sentence of 15 years' incarceration;

Count 2:  Conspiring to provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A, carries a maximum sentence of 15 years' incarceration;

Count 16:  Willfully and Maliciously destroying a Federal Building – namely the U.S. Special Mission – where that building was a dwelling or where the life of a person was

---

[4] The Court found by a preponderance of the evidence that the defendant's conduct led to the deaths of Stevens and Smith, who were killed at the Mission. *United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 190 (D.D.C. 2018). (Doherty and Woods were killed at the Annex.)

placed in jeopardy, in violation of 18 U.S.C. § 1363, carries a maximum sentence of 20 years' 20 incarceration; and

Count 18:  Carrying a Semiautomatic Assault Weapon during and in relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c), carries a minimum sentence of 10 years' incarceration and a maximum sentence of life imprisonment.

Accordingly, the total statutory maximum sentences for Counts One, Two and Sixteen is 50 years' incarceration, and the sentence for Count Eighteen must be at least 10 years, to be served consecutively to the terms of imprisonment imposed on the other counts.

When, as here, a defendant is convicted of multiple counts and the Guidelines provide for a term of imprisonment exceeding the greatest single statutory maximum term of incarceration, consecutive statutory maximum sentences are to be imposed to affect the appropriate term of imprisonment.  U.S.S.G.§ 5G1.2(d), *see* commt., n.1 ("If no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve total punishment.").[5]

## V.    Sentencing Guidelines

---

[5] "The sentencing package doctrine recognizes that when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan . . . ." *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (citation and internal quotation omitted) ("Sentences which include § 924(c) counts are particularly well suited to be treated as a package."); *see also Greenlaw v. United States*, 554 U.S. 237, 253 (2008) (recognizing the practice of "sentencing packag[ing]" in cases with multiple counts of conviction).   In terrorism cases, sentencing courts routinely stack the mandated statutory maximum sentences for similar offenses to achieve a Guidelines sentence.  *See, e.g., United States v. Aswat*, 04 Cr. 356 (KBF) (S.D.N.Y.) (stacking convictions for providing and conspiring to provide material support (§ 2339B) in order to sentence defendant to 240 months); *United States v. Sherifi*, 09 Cr. 216 (FL) (E.D.N.C.) (sentencing defendant to statutory maximum 15 years' imprisonment on material support count, to be followed by mandatory minimum 5 year and 25 year sentences, as part of a total 45-year sentence); *United States v. Bujol*, 10 Cr. 368 (DH) (S.D.Tex.) (sentencing defendant to a total of 240 months' imprisonment by stacking statutory maximum penalties for 18 U.S.C. § 2339B and 18 U.S.C. § 1028A); *United States v. Faris*, 03 Cr. 189 (LMB) (E.D. Va.) (court imposed statutory maximum on both 18 U.S.C. § 371 and 18 U.S.C. § 2339B, and ordered that the sentences be served consecutively, resulting in a 240 month sentence); *United States v. Hayat*, 05 Cr. 240 (GEB) (E.D. Cal.) (imposing maximum 15-year sentence for violation of 18 U.S.C. § 2339B as well as maximum 3-year sentence for each of three counts of 18 U.S.C. § 1001, and ordering that the sentences for all four counts be served consecutively, for a total of 288 months' imprisonment).

The Supreme Court has instructed that the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 45 (2007). "As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. As "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," the Guidelines are the "starting point and the initial benchmark" for sentencing. *Id.* at 46; *Khatallah*, 41 F.4th at 644 (same).

The Court has previously determined the Guidelines sentencing range for this case:

> The base offense level is 38 for Abu Khatallah's convictions on Counts One, Two, and Sixteen because his conduct resulted in death and the most analogous guideline for his conduct is that of second-degree murder. *See* U.S.S.G. § 2K1.4(c)(1); *id.* § 2A1.2; *see also id.* § 2X2.1. The Court will apply sixteen levels of enhancement—four based on Abu Khatallah's role as an organizer or leader of the offense, *id.* § 3B1.1, and twelve based on the fact that the offense involved or was intended to promote a federal crime of terrorism, *id.* § 3A1.4. As a result, the total offense for Counts One, Two, and Sixteen is 54. And because of the terrorism enhancement, Abu Khatallah's criminal history category is VI. *Id.* The Guidelines sentence for these three counts is therefore life imprisonment. *Id.* § 5A (sentencing table).

*United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 202 (D.D.C. 2018).[6] As noted by the D.C. Circuit, even if the Court were to disregard the defendant's acquitted conduct entirely, his Guidelines Sentencing range would be 30 years to life. *Khatallah*, 41 F.4th at 649 ("30-year sentence—the bottom of the Guidelines range once acquitted conduct is set aside"). This is the range referred to below, when the Guidelines sentencing range is cited.

**VI.    The Section 3553(a) sentencing factors support the imposition of a sentence at the high end of the Guidelines sentencing range.**

---

[6]    *See also* 6/27/18 Transcript of Sentencing Hearing ("Trans.") at 4 ("The Court then accepts the factual findings in the PSR and adopts them for purposes of this sentencing."); Statement of Reasons, at 1. [ECF # 548]

The Court should next consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. That Section provides that the Court consider the following: (1) "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); (2) "the history and characteristics of the defendant," *id*.; (3) the promotion of "respect for the law," 18 U.S.C. § 3553(a)(2)(A); (4) general and specific "deterrence," 18 U.S.C. § 3553(a)(2)(B)(C); (5) the Guidelines and Guideline range, § 3553(a)(4); and (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As demonstrated below, each of these sentencing factors supports the imposition of a sentence at the high end of the Guidelines sentencing range.

A.     **The Nature and Circumstances of the Offenses**

The attack on the Special Mission was a horrific act of violence: a terrorist attack against a diplomatic facility in which militants murdered two Americans, including the incumbent ambassador. The defendant did not merely participate in that deadly attack; rather, he was an organizer and leader of it, with the foreseeable consequence that Americans would die. *Khatallah*, 314 F. Supp. 3d at 190.

It is difficult to overstate the seriousness of the defendant's crimes. As the Court has recognized: "four incredibly brave and patriotic Americans . . . perished in the attack" and "it was the first time in 40 years that a United States ambassador had been killed in the line of duty." Trans. at 49-50; *see also Khatallah*, 41 F.4th at 618 ("Ambassador Stevens' death shocked the American public."), at 649 (noting the "seriousness of [defendant's] actions"). "[T]errorism is different from other crimes." *United States v. Mumuni Saleh*, 946 F.3d 97, 112 (2d Cir. 2019). "Terrorism is the modern-day equivalent of the bubonic plague: it is an existential threat." *United*

7

*States v. Mehanna*, 735 F.3d 32, 40 (1st Cir. 2013).[7]  In sum, the nature and circumstances of the defendant's crimes support the imposition of a sentence at the high end of the Guidelines sentencing range.

### B.    The History and Characteristics of the Defendant

Both Congress and the Sentencing Commission have concluded "that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and *the difficulty of deterring and rehabilitating the criminal*, and thus that terrorists and their supporters should be incapacitated for a longer period of time."  *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir. 2003) (emphasis added).

As the Court previously observed, the defendant

> [s]pent [his] entire adult life in a culture of violence, oppression by the Gaddafi regime, imprisonment in brutal conditions, armed conflict during the revolution and continued, in effect, civil war after the revolution.  None of those facts are seriously contested, and, sir, you strike me as a creature of that culture; perhaps not the stone-cold premeditated terrorist that the government makes you out to be, but *someone who might readily resort to or order violence in furtherance of whatever ideological or political goals you might have*.

Trans. at 55 (emphasis added).

Additionally, the defendant harbors fervent anti-American views:  (1) he lamented the fact that that more Americans had not been murdered during the attack, declaring that he had "intended then to kill everybody there"; and (2) he has declared that "the United States was the cause of all the world's problems."  Additionally, the defendant has no remorse for his actions:  he stated that

---

[7]   Notwithstanding the defendant's protestations to the contrary, this is a terrorism case:  "That is because three of the crimes of which the jury did convict [defendant] —conspiring to provide material support to terrorists, providing such support, and destruction of government property—are themselves qualifying offenses in the definition of '[f]ederal crime of terrorism.'"  *Khatallah*, 41 F.4d at 648.

8

he "felt nothing for the deaths of the four Americans . . . . [I]t was like something he would watch on television." The history and characteristics of the defendant, therefore, support a sentence at the high end of the Guidelines sentencing range.[8]

**C.      Promotion of respect for the law**

The gravity of the defendant's crimes requires the imposition of a sentence at the high end of the Guidelines sentencing range to promote respect for the law. *See, e.g., Gall*, 552 U.S. at 54 (recognizing that "a lenient sentence for a serious offense threatens to promote disrespect for the law"). This rationale is particularly applicable here, given the international media coverage garnered by the Benghazi attack: "the attention to be generated by [defendant's] release and likely return to [Libya] could inspire others to try to complete his mission or to embark on a different attack." *United States v. Ressam*, 679 F.3d 1069, 1091 (9th Cir. 2012).

**D.      General and Specific Deterrence**

First, general deterrence is a particularly important sentencing factor in terrorism cases. As the Court previously noted:

> The United States has diplomatic outposts and government facilities all over the world which are staffed every day not just by ambassadors, but by government employees, local employees, and private contractors, and anyone intent on doing those people harm or doing harm to the facilities themselves must know that there will be consequences; that they will be apprehended, prosecuted, and *given stiff sentences*, if they are convicted.

Trans. at 56 (emphasis added); *Khatallah*, 41 F.4th at 650 ("those contemplating attacks on the United States, its official properties, and (most importantly) its personnel must know they will face severe consequences if apprehended and convicted. Their leaders even more so."); *see also*

---

[8] In any event, the defendant's characteristics and history clearly do not support varying downward from the Guidelines sentencing range. *Khatallah*, 41 F.4th at 650 (questioning relevance of "paying attention and being respectful in court").

*United States v. Rayyan*, 885 F.3d 436, 443 (6th Cir. 2018) ("The judge reasonably thought a substantial sentence would deter like-minded sympathizers [of ISIS] from taking even the first steps toward transforming sympathy into action."); *United States v. Stewart*, 590 F.3d 93, 178 (2d Cir. 2009) (noting "the reality that the objective of terrorism is to kill large numbers of innocent people and that maximum deterrence needs to be achieved irrespective of success."); *United States v. Lakhani*, 480 F.3d 171, 187 (3d Cir. 2007) ("even if potential terrorists are unlikely to be undeterrable [sic], their necessary aiders and abetters . . . may be").

Second, specific deterrence is also in important in terrorism cases: "terrorists[,] [even those] with no prior criminal behavior, are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." *United States v. Jayyousi*, 657 F.3d 1085, 1117 (11th Cir. 2011) (citation and internal quotations omitted); *Saleh*, 946 F.3d at 112–13 ("[T]errorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal.") (citation and internal quotations omitted); *United States v. Ali*, 799 F.3d 1008, 1031 (8th Cir. 2015) (same); *United States v. Hammoud*, 483 F. App'x 865, 873 n.10 (4th Cir. 2012) (same). Furthermore, there is no reason to believe that, with respect to terrorists, recidivism decreases with age. *See, e.g.*, *Jayyousi*, 657 F.3d at 1117 ("reject[ing] th[e] reasoning" that "recidivism ordinarily decreases with age" when it comes to terrorists.).

In sum, the defendant committed a highly publicized terrorist attack. Accordingly, the need for both general and specific deterrence supports the imposition of a sentence at the high end of the Guidelines sentencing range.

**E.     A Guidelines sentence is appropriate.**

10

Analysis of the Section 3553(a) factors demonstrates that a Guidelines sentence is appropriate in this case. *Khatallah*, 41 F.4th at 649 (noting that the sentencing factors support a Guidelines sentence); *see also Ressam*, 679 F.3d at 1099 (Reinhardt, J., concurring) ("[T]here seems to be little about the case of a foreign terrorist that would ordinarily justify less than a guideline sentence."); *United States v. Kourani*, 6 F.4th 345, 358–59 (2d Cir. 2021) (where defendant convicted of material support (§ 2339B), Guidelines "sentence simply "reflect[s] Congress' judgment as to the appropriate national policy for such crimes.").

**F.     Unwarranted sentencing disparities**

As the D.C. Circuit has stated: "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) (citation and internal quotation omitted); *see also United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (same). An unwarranted sentencing disparity is extremely unlikely to occur in this case, given that the gravity of the defendant's crimes is virtually unprecedented. *See, e.g.*, Trans. at 50 ("it was the first time in 40 years that a United States ambassador had been killed in the line of duty."); *see also United States v. Abu Ali*, 410 F. App'x 673, 678 (4th Cir. 2011) (approving district court's conclusion that terrorism conviction constituted a "a singular case" lacking "'substantial[ly] similar' benchmark case"); *Kourani*, 6 F.4th at 357 (recognizing that terrorism conviction "presented a 'unique' case"). Nevertheless, imposition of a sentence at the high end of the Guidelines sentencing range would be in accord with sentences that are regularly imposed for material support convictions (§§ 2339A & B). Courts in terrorism cases have often sentenced defendants at or near the statutory maximum, even where, unlike here, the offense of conviction involved plots or inchoate crimes –

11

not actual violent conduct.[9]

### VII. The Court should impose a sentence of 50 years' imprisonment on the terrorism counts.

Here, the sentencing factors call for the imposition of the statutory maximum sentences for the terrorism charges – Counts 1, 2, and 16 – to be served consecutively to the Court's sentence for Count 18 – which will result in a sentence at the high end of the Guidelines sentencing range. While a "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," *Rita* 551 U.S. at 351, and it "may not presume that the Guidelines range is reasonable," *Gall*, 552 U.S. at 50; *Nelson v. United States*, 555 U.S. 350, 350 (2009), "even in an advisory capacity the Guidelines serve as 'a meaningful benchmark' in the initial determination of a sentence and 'through the process of appellate review.'" *Rosales-Mireles v. United States*,

---

[9] *See, e.g.*, *Lakhani*, 480 F.3d at 187 (for defendant convicted of 18 U.S.C. § 2339A and associated offenses, "in light of the factors set forth in 18 U.S.C. § 3553(a)," a sentence of 47 years' imprisonment was reasonable); *United States v. Hassan*, 742 F.3d 104, 111, 115-24 (4th Cir. 2014) (defendant who expressed support for extremist group, traveled to Middle East, and purchased a "small caliber rifle," convicted of providing material support (§ 2339A) sentenced to 180 months); *United States v. Carpenter*, 21-cr-38 (E.D. Tenn.) (defendant, who distributed ISIS propaganda and offered translations services to agent posing as an ISIS member, convicted of attempted material support (§ 2339B) and sentenced to 240 months); *United States v. Shihab,* 22-cr-236 (S.D. Ohio) (defendant, who attempted to smuggle foreign nationals into U.S. and surveilled former president's residence as part of ISIS scheme to kill former president, pleaded guilty to material support (§ 2339A) and sentenced to 178 months); *United States v. McCormick*, 19-cr-262 (D. Conn.) (defendant, who expressed support for ISIS and attempted to travel to Middle East, pleaded guilty to material support (§ 2339B) and sentenced to 144 months); *United States v. Pelkey*, 22-cr-50 (D. Me.) (defendant, who conspired to attack a Chicago mosque, pleaded guilty to material support (§ 2339A) and sentenced to 180 months); *United States v. Raishani*, No. 17 Cr. 421 (RA) (S.D.N.Y.) (defendant, who attempted to travel to Syria to join ISIS, pleaded guilty to material support (§ 2339B) and conspiracy sentenced to 300 months); *United States v. Naji*, No. 16-cr-653 (FB) (E.D.N.Y. June 11, 2019) (defendant, who posted pro ISIS content and traveled to Yemen, pleaded guilty to material support (§ 2339B) sentenced to 240 months); *United States v. Saidakhmetov*, No. 15-cr-95 (WFK), 2018 WL 461516 (E.D.N.Y. Jan. 18, 2018) (defendant, who contacted ISIL operative and attempted to travel to their territory, pleaded guilty to material support (§ 2339B), sentenced to 15 years – the then-statutory maximum); *United States v. Alimehmeti*, No. 16 Cr. 398 (PAE) (S.D.N.Y.) (defendant, who expressed support for ISIS, attempted to travel to Syria, and collected firearms, pleaded guilty to providing and attempting to provide material support (§ 2339B) and to making a false statement in a passport application to facilitate an act of international terrorism, sentenced to 264 months).

The defendant has not suggested – much less cited any examples to establish – that a Guidelines sentence would result in an unwarranted sentencing disparity. *See generally* Def's Sent. Memo. [ECF # 532]

585 U.S. 129, 133 (2018).

The advisory Guidelines sentencing range should, therefore, be given considerable weight. First, the Guidelines range is itself a § 3553(a) factor: "The fact that § 3553(a)[(4)] explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50, n.6. Second, one of the Sentencing Commission's purposes in promulgating the Guidelines was to "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2)." 28 U.S.C. §§ 991(b)(1)(A), 994(f). The Commission wrote the Guidelines to "carry out these same § 3553(a) objectives," resulting in "a set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice." *Rita*, 551 U.S. 338, 350.

Moreover, "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita*, 551 U.S. at 349. As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations,

> probation and parole office statistics, and other data. U.S.S.G. § 1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. *See* 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005). "[W]here judge and Commission both determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that significantly increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347. In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Most importantly, the D.C. Circuit has noted that the Section 3553(a) sentencing factors support a Guidelines sentence. *Khatallah*, 41 F.4th at 649 (all the sentencing factors – with the possible exception of acquitted conduct – "either support[] imposition of a sentence within the Guidelines range or [are] a mixed bag"). Additionally, in terrorism cases, "the Guidelines, while only advisory, appropriately reflect Congress's considered judgment that terrorism is different from other crimes. [T]errorism represents a particularly grave threat because the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal." *Saleh*, 946 F.3d at 112-13 (internal quotations omitted). Based on the severity of his crimes and his lack of remorse, the defendant should be sentenced at the high end of his Guidelines sentencing range.

**VIII. Conclusion**

Based on the severity of his crimes and his utter lack of remorse, the government believes that the defendant deserves a life sentence. "It must be remembered that [defendant] was convicted of two counts of supporting terrorism and one count of attacking a United States Mission. Given the gravity of such an assault on an American diplomatic facility and . . . the vital need to deter such crimes," *Khatallah*, 41 F.4th at 643, the government believes the sentence should reflect the gravity of these terrorism offenses. Understanding that the Court previously sentenced the defendant to 10 years' imprisonment on Count 18, which is the only count of conviction carrying a potential sentence of life, if the Court once again imposes the mandatory minimum 10-year sentence for Count 18, the government asks the Court to impose consecutive statutory maximum sentences for Counts 1, 2, and 16 – for a total of 50 years' imprisonment on the terrorism charges. This would result in a total sentence of 60 years' imprisonment, which falls

within the Guidelines sentencing range, is consistent with the sentencing factors, and reflects the seriousness of the defendant's crimes and his complete lack of remorse.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:       /s/
                John Crabb Jr.
                Assistant United States Attorney
                N.Y. Bar No. 2367670

                Michael C. DiLorenzo
                Special Assistant U.S. Attorney
                MD Bar No. 931214 0189

                United States Attorney's Office
                601 D Street, N.W.
                Washington, D.C. 20530
                (202) 252-1794
                john.d.crabb@usdoj.gov