UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :

           v.    :    14-cr-141 (CRC)

AHMED ABU KHATALLAH    :

## DEFENDANT'S RESENTENCING MEMORANDUM

On June 17, 2018, after presiding over this matter for four years, including extensive pretrial evidentiary hearings and a trial that spanned more than two months, and after reviewing substantial pleadings, exhibits, and witness testimony, this Honorable Court thoughtfully and thoroughly considered the factors set forth in 18 U.S.C. § 3553(a) and imposed a sentence that was consistent with the jury's verdict, including acquittals on all but four counts of the indictment. Like the jury, the Court did not allow the unquestionably tragic, emotional, and dramatic nature of the events that led to the charges in this matter or the high-profile nature and historic significance of the prosecution of this case to improperly influence the Court's determination of an appropriate sentence for the convicted conduct. The Court imposed a total sentence of 264 months. In doing so, the Court "highlighted a few of the most relevant factors in this case." ECF 539 at 52-62 (sentencing transcript). Condensing all that went into that decision into a short statement (ten pages of transcript) was obviously not possible.

The District of Columbia Circuit—after reviewing the cold appellate record and the Court's relatively short explanation of the factors supporting the sentence—found that the Court had not adequately justified the extent of the variance from the range recommended by the United States Sentencing Guidelines. As the Court recently summarized: "The D.C. Circuit rejected Khatallah's

challenges to the convictions but agreed with the government that the 'sentence [was] substantively unreasonably low in light of the gravity of his crimes of terrorism,' holding that the Court's 'decision to disregard conduct for which Khatallah was acquitted' did not, on the record presented, justify the downward departure." ECF 600 at 3 (quoting *United States v. Khatallah*, 41 F.4th 608, 617 (D.C. Cir. 2022)).

The D.C. Circuit's decision does not require this Court to abandon its carefully considered decision to account for the full impact and implications of jury's verdict, along with the additional sentencing factors, in crafting an appropriate sentence. The D.C. Circuit's decision does not require this Court to disregard its intimate familiarity with this matter as it exercises its authority and responsibility to impose a just and fair sentence. The D.C. Circuit's decision requires only that the Court more fully explain its reasons for the sentence it chose. *Khatallah*, 41 F.4th at 649 ("An unexplained variance is a substantively unreasonable variance."). The Court's decision to vary from the sentence recommended by the Guidelines was based only in part (although perhaps large part) on the Court's decision to avoid relying on acquitted conduct. The Court's view of the impact of the acquitted conduct on the Guidelines range and recommended sentence was greater than the D.C. Circuit stated and well within the Court's discretion to determine. In addition, other factors— factors that were not fully explained by the Court or considered by the D.C. Circuit—impacted the Court's decision.

Mr. Khatallah will appear before this Honorable Court for resentencing on September 26, 2024. At that time, because nothing has changed since the Court made its well-considered determination of an appropriate sentence, the Court should stand by its original decision and re-impose its original total sentence of 264 months. The original sentence is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a). Rather

than require Mr. Khatallah to serve additional years in prison to punish him for conduct for which he was not convicted, the Court should explain all the reasons that supported and continue to support its original sentence. The factors the Court discussed at the June 2018 sentencing hearing, along with the factors discussed in the Defendant's Sentencing Memorandum, ECF 532,[1] and the additional factors considered by the Court, as discussed more fully below, are more than sufficient to support the Court's sentence of 264 months.

## Background

The total sentence of 264 months imprisonment was composed of a term of 144 months on each of Counts 1, 2, and 16 (running concurrently with each other) plus the statutorily required consecutive sentence of 120 months on Count 18 for the possession of a semiautomatic assault weapon during a crime of violence, violation of 18 U.S.C. § 924(c). While composed of component parts, the Court made it clear that it was imposing the sentence as a whole because it had determined that this total properly accounted for Mr. Khatallah's culpability for the conduct for which he had been convicted. ECF 539 at 62 ("And I want to make clear for the appellate record that I view these sentences as part of a package that results in an appropriate overall sentence, one that balances the grave harm that I have found the defendant caused by a preponderance of the evidence on the one hand with the respect that I believe is due the jury's overall verdict and underlying findings.")

At the time it imposed the original sentence, the Court was intimately familiar with the factual and legal aspects of this case. The Court had overseen a seven-week jury trial. Prior to that trial, it had conducted months and months of pretrial proceedings, proceedings that included

---

[1] Mr. Khatallah incorporates and continues to rely upon the arguments made in Defendant's Sentencing Memorandum (ECF 532) without restating all of them here.

3

a weeklong suppression hearing, multiple CIPA hearings, and extensive motions practice. Prior to imposing a sentence, the Court conducted a review of the entire trial record to resolve Mr. Khatallah's motion for a mistrial, reviewed submissions from the government, Mr. Khatallah and others, and heard from witnesses. Given the Court's extensive knowledge of this matter, counsel will not review the entire factual background here, but it was based on that intimate familiarity and extensive knowledge that the Court imposed the sentence of 264 months.

In sending this matter back for reconsideration, the D.C. Circuit did not question the Court's familiarity with or knowledge of the case. The D.C. Circuit did not fault the Court for declining to consider acquitted conduct during sentencing. *See Khatallah*, 41 F.4th at 651 ("the district court's discretion to vary downward to discount acquitted conduct is undisputed in this case"). The D.C. Circuit did not direct the Court to impose a greater sentence, but rather remanded for resentencing in light of the D.C. Circuit's view that the sentence imposed was not fully supported by the jury's acquittals or justified on the record before the court. *Id.* All that the D.C. Circuit decision requires is for this Court to more fully explain how the sentence of 264 months is supported by the § 3553 factors while respecting the reality "that the jury explicitly found that the defendant's conduct did not result in death, [] rejected many of the facts presented that tied him to direct participation in the first wave of the attacks and to the attack on the Annex, and that what it convicted him of was essentially a property crime." ECF 539 at 60.

## Argument

At the June 2018 sentencing hearing, the Court explained some of the factors that supported the sentence and focused on the "the most important" factor, the jury's acquittals. ECF 539 at 56-61. The Court did not, however, simply vary from a Guidelines sentence of 30 years—the bottom of the range that the D.C. Circuit stated would apply if acquitted conduct was removed from the

4

Guidelines calculation—to 12 years, as the D.C. Circuit viewed the sentence. *Khatallah*, 41 F.4th at 648. Instead, the Court imposed a combined sentence of 264 months (22 years) on the three substantive offenses and the 924(c) count. ECF 539 at 62. In doing so, the Court explicitly noted that stacking the statutory maximum sentences for the three substantive offenses would be "particularly unfair" because "they all stem and are based on the same conduct," ECF 539 at 61, and the Court specifically noted that it was listing only "a few" of the factors that went into its decision. ECF 52 at 52. The D.C. Circuit did not consider the Court's evaluation of the stacking issue or have before it the Court's analysis of additional factors that support the sentence imposed. The Court should now reimpose the original sentence and more fully and specifically explain the Court's evaluation of the impact of the jury's verdict and the additional factors that support the total sentence of 264 months.

### A. Guidelines and Avoiding the Use of Acquitted Conduct

Following Mr. Khatallah's trial and acquittal on all but four of the charged offenses, the Court held a hearing and then made findings based on a preponderance of the evidence regarding the appropriate calculations under the Guidelines, concluding that the Guidelines recommend a sentence of life imprisonment, plus ten years for the 924(c) offense. ECF 529 at 35-36. The Court, however, appropriately decided not to sentence Mr. Khatallah based on conduct of which he was acquitted. ECF 539 at 59. Neither the government nor the D.C. Circuit criticized the Court's decision to prioritize and defer to the findings made by the jury. *See, Id.* at 58. The Court's decision regarding acquitted conduct was constitutionally sound, and the Court's commitment "to stand by

5

its previous decision to steer clear of acquitted conduct during this redux, for the reasons explained at length at the prior sentencing," ECF 600 at 15, is equally sound.

Prior to the June 2018 sentencing hearing, and on appeal, Mr. Khatallah submitted that to fully discount acquitted conduct consistent with the jury's verdict, the Court should not apply (1) the cross-reference for second-degree murder in determining the base offense level, (2) the terrorism enhancement, or (3) the leadership enhancement. ECF 532 at 4-9; *Khatallah*, 41 F.4th at 648. The government argued that discounting the acquitted conduct required only discounting the cross-reference for second-degree murder. *Khatallah*, 41 F.4th at 647. The D.C. Circuit agreed with this Court's finding "that 'the jury *did not necessarily* reject' the facts underlying the terrorism and leadership enhancements." *Id.* at 648 (emphasis added). The D.C. Circuit, therefore, found that "the Guidelines range [for the three substantive offenses] would have been 30 years to life even without relying on acquitted conduct." *Id.* With the Guidelines recommended (and mandatory minimum) 10-year sentence for the 924(c) offense, the total—absent acquitted conducted as conceded by the Government and found by the D.C. Circuit—would be 40 years to life. Thus, there is no dispute that a variance from life to 40 years for all of the offenses would be supported by the discounting of acquitted conduct alone. The impact of the jury's verdict on the base offense level under the Guidelines, however, was not the only factor this Court considered.

The D.C. Circuit found that this Court's statement that "'this would be an easy sentencing but for the final factor, . . . the jury's acquittals'" "strongly implies that the other Section 3553(a) factors were a wash, and but for the jury's acquittals, the district court would have sentenced Khatallah consistent with the Guidelines' recommendation of a life sentence." *Id.* Based on this assumption, the D.C. Circuit found that the variance from the 30-year bottom of the range for the

three substantive offenses was "unexplained." That conclusion ignores the fact that there was plenty of support, including the further implications of the acquitted conduct, for the variance.

### B. Avoiding the Improper Stacking of Sentences for the Same Conduct

In reaching its conclusion, the D.C. Circuit did not consider this Court's finding regarding the issue of stacking of sentences related to the three substantive offenses of conviction: Count 1, charging conspiracy to provide material support and resources to terrorists and authorizing a statutory maximum sentence of 15 years; Count 2, charging providing material support and resources to terrorists and authorizing a statutory maximum sentence of 15 years; and Count 3, charging maliciously destroying and injuring dwellings and property placing lives in jeopardy and authorizing a statutory maximum sentence of 20 years. The conduct underlying these three offenses was the same.

Prior to the June 2018 sentencing, Mr. Khatallah argued:

> Unless the Court orders otherwise, sentences imposed at the same time for multiple counts are presumed to run concurrently. 18 U.S.C. § 3584(a). When imposing sentences for multiple offenses, the Court is authorized to impose concurrent or consecutive sentences, "except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt." *Id*. Congress specifically directed the Sentencing Commission that the Guidelines should reflect "the general inappropriateness of imposing consecutive terms of imprisonment for an offense of conspiring to commit an offense or soliciting commission of an offense and for an offense that was the sole object of the conspiracy or solicitation." 28 U.S.C. § 944(l)(2).
>
> Here, while not labeled "attempts," the material support charges (Counts One and Two) are no different than – and perhaps less than – attempts to commit the underlying offense of injuring a federal building (Count Sixteen). "The elements of attempt are (1) intent to commit the predicate offense, and (2) conduct that is a substantial step toward its commission." *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007). Counts One and Two required that Mr. Abu Khatallah agreed to and provided support for the underlying violation of § 1363, which was the sole object of

7

the offense of conviction. Agreeing to and providing support for that offense may be less than taking "a substantial step toward its commission," but that distinction further supports a finding that § 3584 prohibits consecutive sentences in this case – permitting consecutive sentences for material support offenses that do not rise to the level of an attempt, while prohibiting consecutive sentences that constituted a greater step toward committing the underlying offense would be nonsensical. Thus, § 3584(a) prohibits consecutive sentences under the circumstances of this case.

Nonetheless, because the Court has determined that a term of life is the applicable sentencing "range" for Counts One, Two, and Sixteen, and the statutory maximum on the count carrying the highest statutory maximum (Count Sixteen) is less than a term of life (20 years), the Guidelines recommend that the Court impose consecutive sentences of the statutory maximum terms of imprisonment for each of these three offense. *See* U.S.S.G. § 5G1.2(d).  Even if permissible under 18 U.S.C. § 3584(a), imposing consecutive sentences in this case is not appropriate because Counts One, Two, and Sixteen "describe essentially the same criminal conduct[.]" *United States v. Nayyar*, No. 09 Cr. 1037(RWS), 2013 WL 2436564, at *9 (S.D.N.Y. June 5, 2013) (declining to impose consecutive sentence for conspiracy to provide material support and providing material support to terrorist in violation of 18 U.S.C. § 2339B). This factor supports not only a variance, but also a departure from the Guidelines. *See United States v. Rahman*, 189 F.3d 88, 157 (2d Cir. 1999).  As the Second Circuit explained:

> [T]he prosecutor's ability to lengthen sentences in these circumstances simply by adding essentially duplicative counts, each describing the same criminal conduct, is a circumstance that was not adequately considered by the Sentencing Commission when it devised the formula for consecutive sentencing under § 5G1.2(d).

*Id*. (remanding for resentencing and consideration of departure where six consecutive sentences imposed for possession of false passports and three consecutive sentences imposed for resisting agents).

Thus, where the offenses of conspiring to provide material support for (Count One), providing material for (Count Two), and committing the substantive offense of (Count Sixteen), intentionally injuring a federal building, all criminalize the same

8

conduct, the Court should not impose consecutive sentences.

ECF 532 16-18.

At the sentencing hearing, the Court recognized this argument and found that stacking was not appropriate under the circumstances of this case:

> The general rule is that federal sentences run concurrent to one another, but the sentencing guidelines recommend an exception to that rule when the guidelines sentence, here life imprisonment, is higher than the statutory maximum for any individual crime of conviction. In that case, the guidelines recommend stacking the sentence to get to the guidelines sentence, and I find that that is not appropriate in this case for two reasons.
>
> First, as I said, the guidelines sentence overestimates the criminal conduct on the defendant's part as found by the jury; and second, it strikes the Court as particularly unfair in this case to stack all of the sentences on the three property damage counts given that they all stem and are based on the same conduct.

ECF 539 at 61.

The D.C. Circuit made no mention of this finding, yet this stacking issue alone supports a variance from 40 years to 30 years. As discussed above, the government and D.C. Circuit agreed that the bottom of the Guidelines range absent acquitted conduct is 30 years plus the mandatory ten years for the 924c offense. Without stacking, because the Guidelines range is higher than the highest statutory maximum (20 years), that statutory maximum, plus the 10 years for the 924(c) offense, becomes the Guidelines sentence for the three substantive offenses. *See* U.S.S.G. § 5G1.1(a). Thus, the Court's decision not to stack supports the variance from 40 years to 30 years—before consideration of the other circumstances discussed below, which fully justify the additional eight-year variance to the term of 264 months.

### C. Jury's Verdict and Impact on the Terrorism and Leadership Enhancements

Although the D.C. Circuit found that the jury's verdict did not necessarily acquit

9

Mr. Khatallah of the conduct underlying the terrorism and leadership enhancements, which substantially increased his sentencing range, this Court has the discretion to make its own determination of the impact of the jury's verdict on the appropriate use of those enhancements. The D.C. Circuit found only that the Court "did not need to exclude those enhancements" based on the jury acquittals because the acquittals "are consistent with a finding that Khatallah undertook conduct that would support those enhancements." *Khatallah*, 41 F.4th at 648. This is a far cry from requiring the Court to apply fully the enhancements or holding that the jury's verdict affirmatively supported the enhancements. The D.C. Circuit did not disturb this Court's discretion to apply the enhancements but then vary downward from them because many of the facts relevant to the enhancements are intrinsically bound up with acquitted conduct. In support of the 264 month sentence, the Court should clarify that the jury's verdict supports not only discounting acquitted conduct to the extent that the jury's verdict necessarily required, but also as to the application of the terrorism and leadership enhancements—which while not necessarily required is appropriate given the Court's knowledge of the evidence at trial and understanding of the likely basis for the verdict.

As a legal matter, the jury did not make any findings that Mr. Khatallah had the statutorily required motivation for the terrorism enhancement to apply. The terrorism enhancement applies if the defendant's offense "involved, or was intended to promote, a federal crime of terrorism" as defined in 18 U.S.C. § 2332b(g)(5). *See* U.S.S.G. § 3A1.4 cmt. 1. That definition, in turn, refers to an offense with a specific motivation: the offense must be "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). None of the jury's convictions contain within them a finding that Mr. Khatallah had this motivation. Most relevant, in Counts 1 and 2, the jury convicted

Mr. Khatallah of conspiring to violate and violating 18 U.S.C. § 2339A. While that statute is entitled "Providing material support to terrorists," the body of the statute does not mention any 'governmental' motivation; rather, it only criminalizes knowingly providing material support or resources for the commission of a range of crimes. *See* 18 U.S.C. § 2339A(a); *see also Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528 (1947) ("[H]eadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. . . . [t]hey cannot undo or limit that which the text makes plain."). Therefore, the jury's convictions on counts nominally entitled terrorism do not constitute a finding on the motivation necessary for the terrorism enhancement.

This is further confirmed by the jury instructions and verdict form. The instructions for Counts 1 and 2 ***do not contain the word "terrorism,"*** nor do they instruct the jury to make a finding that Mr. Khatallah was motivated to coerce, intimidate, or retaliate against a government. *See* ECF 464 at 14-18 (Jury Instructions). The verdict form markedly differs from the statute in how it names the Counts: unlike the statute, it omits the words "to terrorists" after the phrase "providing material support." *See* ECF 488 (Verdict Form) (labelling Count 1 "conspiracy to provide material support or resources from on or about September 11, 2012 to on or about September 12, 2012" and labelling Count 2 "providing material support or resources, between or about September 11, 2012 and on or about September 12, 2012"); *cf.* ECF 509 at 5-6 (Def. Objections to PSR). Thus, as a legal matter, none of the jury's convictions compel (or even support) the required finding for the terrorism enhancement that Mr. Khatallah had the relevant motivation against a government.

As a factual matter, the jury's acquittals reveal the evidence in favor of the necessary motivation to be, at best, muddled. The Court previously based its motivation finding, in part, on the choice of targets (a federal facility). *See United States v. Khatallah*, 314 F.Supp.3d 179, 198-

11

99 (D.D.C. 2018). But that alone does not support the terrorism enhancement. The Court also relied on the testimony of Ali Majrisi and FBI Special Agent Clarke's testimony regarding statements allegedly made by Mr. Khatallah. *Id.* at 199. However, if the jury had credited this evidence, the jury would not have acquitted Mr. Khatallah of most of the charges (including those involving death), because this testimony largely attempted to blame Mr. Khatallah for the deaths. While, as the D.C. Circuit found, the Court need not read the verdicts this way, the Court's knowledge of the testimony at trial supports such a reading and discounting of the terrorism enhancement.

Similarly, while the jury's verdicts do not necessary require discounting of the role enhancement, the Court has the discretion to and should do so. Although the Court did not specifically state an intent to discount the role enhancement when imposing the sentence in June 2018, the Court did recognize that the evidence relating to the "resulting in death" element—which was specifically rejected by the jury—is largely the basis for the role enhancement. *See Khatallah*, 314 F.Supp.3d at 200 ("Much of the evidence supporting the Court's conclusion that Abu Khatallah's conduct resulted in death is also relevant to application of this enhancement."). And as this Court recently recognized, "there comes a point when finding that Khatallah quarterbacked the Mission attack conflicts with the jury's finding that he was not responsible for any deaths that night." ECF 600 at 16.

The evidence supporting the leadership enhancement consists of testimony from three Libyan witnesses that Mr. Khatallah was involved in preparation, weapons procurement, rescue blocking, and post-attack boasting. However, had the jury believed the witness who testified that Mr. Khatallah planned the initial attack, it would have necessarily found him guilty of the murders and attempted murder. Had the jury believed the witness who testified that Mr. Khatallah procured the weapons used in the attack, it would have necessarily found him guilty of the murders and

12

attempted murder. Had the jury believed the witness who testified that Mr. Khatallah prevented rescuers from coming to the aid of Special Mission personnel, it would have necessarily found him guilty of the murders and attempted murder. And, had the jury believed the witness who testified that Mr. Khatallah claimed involvement in the initial attack, it would have necessarily found him guilty of the murders and attempted murder. *See* ECF 532 at 5-6. Because the evidence in favor of the leadership enhancement is muddled in light of the jury's acquittals, the Court should vary downward from full application of the enhancement.

### D. Mandatory Minimum and Package Sentencing

The D.C. Circuit failed to recognize that the 22-year sentence was a package sentence. As the D.C. Circuit viewed it, "[b]ecause the mandatory minimum sentence for Khatallah's Section 924(c) offense alone accounted for ten of those 22 years, the district court imposed a sentence of just twelve years for all of the non-Section 924(c) charges combined[.]" *Khatallah*, 41 F.4th at 643. That, however, is not what the Court did. As the Court explicitly stated, the sentence is properly viewed as a 22-year whole, notwithstanding the fact that 10 of these years are required for the 924(c) offense. The discretionary part of the sentence (the 12 years) both avoids consideration of acquitted conduct and avoids over-punishment by taking into account the high statutory mandatory minimum and the specific basis for that mandatory minimum in this case.

The Supreme Court has explicitly permitted sentencing courts to take into consideration required mandatory minimum sentences when determining an appropriate total sentence for multiple offenses. *See Dean v. United States*, 581 U.S. 62, 68 (2017). Courts are not required to ignore the mandatory minimum sentence required by § 924(c) when calculating the sentence for the predicate offenses. *Id.* ("nothing in the law requires such an approach" of ignoring the statutory minimum). In fact, to avoid over punishment, a court should consider the effect of the mandatory

13

minimum. *See id.* at 67-68 ("Likewise, in considering 'the need for the sentence imposed . . . to afford adequate deterrence,' § 3553(a)(2)(B), the District Court could not reasonably ignore the deterrent effect of Dean's 30-year mandatory minimum."). In some cases, a discretionary sentence of "one day" for the predicate offenses may be appropriate if the sentencing court considers that the statutory mandatory minimum will be enough on its own to fulfill the goals of sentencing. *Id.* at 69 ("Whether the sentence for the predicate offense is one day or one decade, a district court does not violate the terms of § 924(c) so long as it imposes the mandatory minimum 'in addition to' the sentence for the violent or drug trafficking crime.").

The D.C. Circuit did not consider this Court's decision to follow the Supreme Court's *Dean* guidance. This Court did not consider the sentence for Counts 1, 2, and 16 in isolation from the statutory minimum 10-year sentence for Count 18, as the D.C. Circuit did: "I want to make clear for the appellate record that I view these sentences as part of a package that results in an appropriate overall sentence[.]" ECF 539 at 62.

Considering the sentence as a whole was particularly appropriate here because the crime carrying a mandatory minimum – possessing an assault rifle – implied far less culpability in the cultural context of Libya at the time, where such weapons were universal. Benghazi had just experienced a civil war in which ordinary citizens, including Mr. Khatallah, had taken up arms, including assault rifles, to defend their fellow citizens from a tyrannical dictator – one whom the United States also opposed. Benghazi was awash in arms, including assault weapons, following the civil war. Margaret Coker, Adam Entous, Jay Solomon & Siohan Gorman, *Miscues Before Libya Assault: Limited Security in Benghazi, Secrecy Over Safe House, Contributed to Tragedy*, Wall St. J., Sept. 21, 2012, http://www.wsj.com/articles/SB10000872396390

4441658045780084111447211162 (quoting former U.S. official: "Benghazi 'was awash with weapons in the hands of various brigades who were all in combat with one another.'")

Mr. Khatallah apparently was convicted of the 924(c) offense based on a surveillance video that depicted Mr. Khatallah with a firearam, more than two hours after the attack on the Mission began, entering and then leaving the Mission property, including briefing entering one of the buildings that was later set on fire. This was during the "crimes of violence" charged in Counts 1, 2, and 16, resulting in the 924(c) conviction. And the jury found that Mr. Khatallah was carrying an assault refile, increasing the mandatory minimum from a term of five years to a term of ten years. *See* 18 U.S.C. § 924(c)(1)(A)(i) and (B)(i). Possessing an assault rifle at that time in Libya, however, was not the equivalent of possessing an assault rifle in the United States during a similar crime. The Court appropriately took this factor into account and imposed a sentence that included the mandatory minimum term, while determining an appropriate total sentence.

The Court's decision to impose a package sentence is also particularly appropriate here, where the application of 924(c) to the offense of conviction was disputed. This Court ruled that a violation of 18 U.S.C. § 1363 (Count 16) is a crime of violence supporting the application of § 924(c) and the conviction in Count 18. *See United States v. Khatallah*, 316 F.Supp.3d 207 (D.D.C. 2018). At least one circuit, however, has disagreed. *See United States v. Melaku*, 41 F.4th 386 (4th Cir. 2022) (finding a § 1361 violation is not a crime of violence); *see also United States v. Bowen*, 936 F.3d 1091, 1104 (10th Cir. 2019) (finding that witness intimidation as it relates to property is not a crime of violence). When sentencing Mr. Khatallah, the Court recognized the risk that Mr. Khatallah's 924(c) conviction could be overturned given the complexities of—and frequently changing—law regarding the definition of a crime of violence

15

for purposes of § 924(c) and formulated the sentence with that possibility in mind. ECF 539 at 62 (noting the sentence is "a package" and "should the Court of Appeals reverse my denial of the defendant's motions for an acquittal on the 924(c) charge, the proper course, in my view, would be an opportunity for resentencing."). By imposing a package sentence the Court appropriately considered all of the sentencing factors including the conduct underlying the 924(c) offense, with or without the mandatory minimum term.

### E. Conditions of Detention

As Mr. Khatallah argued prior to his June 2018 sentencing, the conditions under which he was detained pretrial and continues to be detained support a variance because these conditions are harsher than ordinary conditions of detention. ECF 532 at 22-23. Because of the nature of the charges in this case, Mr. Khatallah has been subjected to Special Administrative Measures ("SAMs"). He was held in solitary confinement throughout his pretrial detention. For four years of pretrial detention, with the exception of legal visits and limited, monitored telephone calls to his family in Libya, he was confined to his cell. He was further isolated by the language barrier and did not see his family or have visits by anyone other than his legal team. These extremely punishing conditions support the variance.

This Court can also consider "facts that did not exist at the time of the original sentencing." *See United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013). This includes the conditions of detention since the June 2018 sentencing hearing. Shortly after his sentencing, Mr. Khatallah was designated to the ADX Florence, the highest security facility within the federal Bureau of Prisons (BOP) with the most taxing conditions of confinement. After the United States Marshal Service transferred custody of Mr. Khatallah to the BOP, BOP initially transported Mr. Khatallah to the United States Penitentiary in Canaan, Pennsylvania (USP

Canaan), where he was held for approximately seven months, before he was transferred to ADX Florence.

Consistent with the SAMs, throughout this journey, Mr. Khatallah was kept separated from all other prisoners. When he was transferred to BOP custody, authorities seized his belongings, including legal papers. Once at USP Canaan, he was placed in a cell isolated from others and no accommodations were made to lessen the psychological impact of the isolation required by the SAMs. Mr. Khatallah does not speak English, making communication with prison officials difficult. The guards were not professional and seemed to purposefully deprive Mr. Khatallah of necessities as a form a punishment based on their understanding of the offense of conviction—as an example, one guard would recite the Star-Spangled Banner while depriving Mr. Khatallah of a Halal meal or other necessity. When he arrived at Canaan, his cell contained a metal bed frame with a mattress that was approximately one meter long, with nothing else. The following day he was given a used towel and half a bed sheet. He frequently was given meals that were not consistent with his religious beliefs, and he therefore went hungry. While at Canaan for approximately seven months, he remained isolated in his cell with a few exceptions, including once when he was taken outside for exercise but left in the cold for hours, once when his case manager had him removed to meet with the case manager and a psychologist, and once when the cell was searched. These conditions were stressful and impacted Mr. Khatallah's physical and mental health.

Mr. Khatallah continues to be detained at ADX Florence and subject to the SAMs. Because ADX Florence houses multiple prisoners subjected to SAMs, procedures there allow officials to permit Mr. Khatallah to have contact with a few other prisoners, but conditions continue to be isolating and particularly punishing with only limited monitored calls with his

family. These conditions are likely to continue until Mr. Khatallah completes his sentence, making every day he serves more punishing than the ordinary federal sentence. This factor supports the variance.

### F.  Avoiding Unwarranted Disparities

The need to avoid unwarranted disparities also support the 264-month sentence. *See* 18 U.S.C. § 3553(a)(6) (one sentencing factor to consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). First, Mustafa Muhammad Muftah Al-Imam was convicted under the same counts as Mr. Khatallah arising out of the same events in Libya. *See U.S.A. v. Al-Imam*, 1:15-cr-00213-CRC-1 (D.D.C.). Unlike Mr. Khatallah, Mr. Al-Imam was ***not*** acquitted of the most serious charges against him, including murder; rather, the jury was unable to come to a unanimous decision as to those offenses, but "at least one and as many as 11 jurors found that [he] did, in fact, commit the more serious crimes charged." *U.S.A. v. Al-Imam*, 1:15-cr-00213-CRC-1, ECF 280 at 93-94 (D.D.C. Feb. 7, 2020). Yet this Court sentenced Mr. Al-Imam to 236 months, or 19 years and six months. *Id.* pp. 95-96. This is two-and-a-half years less than Mr. Khatallah's total 22-year sentence. Although Mr. Al-Imam was not subject to the leadership enhancement, the Court made its determination regarding Mr. Al-Iman fully aware of the relative culpability of these defendants, and the evidence supporting his conviction was much the same as the evidence before the jury in this case.  Notably, the government has agreed to no longer dispute that Mr. Al-Imam's sentence of 236 months was reasonable. *See United States v. Al-Imam*, Case No. 2-3013, Dkt. No. 2069403 at 2 (D.C. Cir. Aug. 12, 2024) (noting that parties "reached an agreement in principle regarding joint motions to dismiss their respective appeals").

Second, another defendant was recently convicted of violating § 1363 for damaging a

federal building – the White House. *See United States v. Ortega-Hernandez*, Case No. 12-cr-00014 (APM), 2023 WL 4419770 at *1 (D.D.C. July 10, 2023). Mr. Ortega-Hernandez was found to have acted with prolonged premeditation and the intention to kill: he engaged in "shooting practice" for six months, before driving 2,000 miles to Washington D.C. and fired multiple shots on the White House with an AK-47-style assault rifle, narrowly missing Secret Service officers. Despite this conduct, Mr. Ortega-Hernandez was sentenced to a total of 15 years imprisonment, through a plea agreement, and the accompanying § 924 charge was dropped, despite the use of the firearm. While Mr. Khatallah went to trial, Mr. Ortega-Hernandez's case is still instructive because he possessed and used an assault rifle on the streets of Washington, D.C., compared to Mr. Khatallah's mere possession of an assault rifle in Benghazi in the 2012 aftermath of a civil war.

## Conclusion

Considering all of the sentencing factors as a whole, the Court's sentence of 264 months (22 years) is well supported. The Court is required to begin with the Guidelines range as determined by the Court's findings of fact based on a preponderance of the evidence, resulting in a recommended sentence of life. As the D.C. Circuit recognized, the jury's verdict alone supports a variance to the Guidelines range that (according to the D.C. Circuit) would apply absent the acquitted conduct, a range of 360 months (30 years) to life, plus the 120 months (10 years) for the 924(c) offense, resulting in a total of 480 months (40 years) to life. This Court's finding that no more than the highest of the statutory maximum terms for the three substances offenses would be "fair," because those offenses are based on the same conduct, fully supports a variance to 240 months (20 years), plus the 120 months (10 years) for the 924(c) offense, for a total of 360 months (30 years). That would be the recommended Guidelines sentence absent stacking and does not take into consideration other factors, including this Court's view of the impact of the

19

jury's verdict on the terrorism and leadership enhancements, the circumstances of the 924(c) offense related to conditions in Libya, Mr. Khatallah's background, the harsh conditions under which the sentence is being served, and the need to avoid unwarranted disparities. These additional factors fully justify the additional eight-year variance from 360 months (30 years) to 246 (22 years).

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500, ext. 5109

/s/
_____
JEFFREY D. ROBINSON (D.C. Bar #376037)
LEWIS BAACH KAUFMANN
 MIDDLEMISS PLLC
1899 Pennsylvania Avenue, N.W., Suite 600
Tel: (202) 833-8900
Fax: (202) 466-5738
jeffrey.robinson@lbkmlaw.com