UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No.: 14-141 (CRC) |
| | : | |
| AHMED SALIM FARAJ ABU KHATALLAH, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S RESENTENCING REPLY MEMORANDUM

The United States of America, hereby, submits this reply memorandum in support of its recommendation for the resentencing of the defendant.

**I.      Introduction**

The government appealed the sentence imposed in this case as substantively unreasonable. When ruling on the government's appeal, the D.C. Circuit stated the following:

> It must be remembered that Khatallah was convicted of two counts of supporting terrorism and one count of attacking a United States Mission. Given the gravity of such an assault on an American diplomatic facility and the district court's own recognition of the vital need to deter such crimes, the district court's weighing of the Section 3553(a) factors could not have supported such a stark additional variance beyond discounting acquitted conduct. *For that reason, we reverse and remand for resentencing.*

*United States v. Khatallah*, 41 F.4th 608, 643 (D.C. Cir. 2022) (emphasis added).

Notwithstanding the D.C. Circuit's unequivocal directive, the defendant argues that, after more fully explaining its reasoning, the Court should reimpose the original sentence. Def. Resent. Mem., at 2. This argument rests on a fundamentally flawed reading of the D.C. Circuit's decision.

Similarly, the defendant misreads the D.C. Circuit's decision, when he argues that (1) the sentences for his terrorism crimes of conviction should not be "stacked" to accomplish a just sentence, and (2) his Guidelines sentencing range, and in particular, the terrorism enhancement should be revisited.  Additionally, the defendant's request for a downward variance due to his conditions of confinement should not be considered, as it was previously presented to the Court.   Last, the cases cited by the defendant regarding unwarranted sentencing disparities are not comparable.

**II.      The defendant misreads and misunderstands the D.C. Circuit's opinion.**

The defendant's arguments that (1) the Court should reimpose the original sentence,   (2) the sentences for his terrorism crimes of conviction should not be "stacked" to accomplish a just sentence, and (3) his Guidelines sentencing range, including application of the terrorism enhancement, should be revisited, are at odds with the D.C. Circuit's opinion.

**A.      The D.C. Circuit held that the defendant's sentence was substantively unreasonable; it did not merely remand to remedy a procedural defect.**

The defendant makes the fantastic claim that the "D.C. Circuit's decision requires only that the Court more fully explain its reasons for the sentence it chose."  (Def. Mem. at 2).  *But see Khatallah*, 408 F.4th at 648-49 (the district court "carefully and comprehensively considered the key sentencing factors set out in Section 3553(a)").  This claim flies in the face of the D.C. Circuit's unambiguous holding that the original sentence was substantively unreasonable:  "The district court abused its discretion by varying downward significantly further and imposing a sentence both lower than the minimum that would be appropriate in light of the jury's acquittals and far lower than could be justified on this record by reference to the Section 3553(a) factors." *Khatallah*, 41 F.4th at 651; *see also id.* at 650-51 ("the district court did not offer a discussion of

2

sentencing factors besides the jury's acquittals that was 'sufficiently compelling to support the degree of the variance.' *Nor could it have, given the facts of this case* and the gravity of Khatallah's terrorism offenses and leadership role in a violent attack on the Mission.") (emphasis added; citation omitted); *id.* at 643 ("But in sentencing Khatallah to just twelve years for the two support-of-terrorism counts and the property destruction count, the district court did not—*and could not on this record*—sufficiently justify its additional variance so far below the sentencing range that would have been appropriate even without any consideration of acquitted conduct.") (emphasis added).[1]

"Sentencing decisions can be reviewed for both procedural errors and their 'substantive reasonableness.'" *Gall v. United States*, 552 U.S. 38, 51 (2007) (procedural sentencing errors include "failing to consider the § 3553(a) factors."). On appeal the government argued that the defendant's sentence was substantively unreasonable. The government did not argue that the Court made a procedural sentencing error. *Khatallah*, 41 F.4th at 648-49 ("We note at the outset that neither this court nor the government takes issue with the procedural soundness of the district court's sentencing statement.").[2]

---

[1] The defendant seems to invite the Court to ignore the D.C. Circuit's decision, by blithely claiming that "because *nothing has changed* since the Court made its well-considered determination of an appropriate sentence, the Court should stand by its original decision and reimpose its original total sentence of 264 months." Def. Mem. at 2 (emphasis added).

[2] When, unlike here, a case is remanded to perfect a sentencing procedural error, the D.C. Circuit makes that clear. *See, e.g., United States v. Hall*, 610 F.3d 727, 745 (D.C. Cir. 2010) ("we must remand the case for resentencing for the district court to explain how it determined the amount of the loss"); *United States v. McCants*, 434 F.3d 557, 558 (D.C. Cir. 2006) ("Because the District Court failed to follow the strictures of Rule 32, we will remand the case for resentencing accompanied by the required findings of fact."); *United States v. Barry*, 938 F.2d 1327, 1333 (D.C. Cir. 1991) ("We do conclude, however, that we must vacate the sentence and remand for resentencing because the factual findings made in support of the § 3C1.1 enhancement" were inadequate.).

**B.     The D.C. Circuit endorsed stacking the defendant's terrorism convictions to accomplish a just sentence in this case.**

The statutory maximum sentence for one of the three terrorism offenses for which the defendant was convicted is 20 years' imprisonment (Count 16), while the statutory maximum for the other two terrorism offenses of conviction is 15 years' imprisonment each (Counts 1 and 2). Accordingly, the Court should impose consecutive sentences for the defendant's terrorism counts of conviction in order to achieve a just sentence. "The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b); *see also* U.S.S.G. § 5G1.2(d), cmt., n.1 ("If no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve total punishment.").

The D.C. Circuit determined that consideration of the Section 3553(a) sentencing factors supports imposition of consecutive sentences. First, that court found that in light of the Section 3553(a) factors, a Guidelines sentence is appropriate. *See, e.g., Khatallah*, 41 F.4th at 649 ("Every factor discussed by the district court other than acquitted conduct either supported imposition of a sentence within the Guidelines range or was a mixed bag.").[3] Next, the D.C. Circuit took "as given that the Guidelines sentencing range would have been 30 years to life even without relying on acquitted conduct," *Khatallah*, 41 F.4th at 648, and noted that "[t]he Section 924(c) count carried a statutory minimum of ten years to run consecutively to any other sentence

---

[3]     More specifically, the D.C. Circuit found that (1) "the gravity of Khatallah's terrorism-support and Mission-destruction convictions" *id.* at 649, "Khatallah's characteristics and history" *id.* at 650, and the need for deterrence, *id.*, all support imposition of a Guidelines sentence.

4

. . . ." *Id.* at 646.

But, as noted, the maximum statutory sentence for any single terrorism offense for which the defendant was convicted is 20 years' imprisonment. The D.C. Circuit, therefore, necessarily concluded that – in order to achieve a just sentence, i.e., a Guidelines sentence – the defendant's sentences for his terrorism convictions should be served consecutively. *See* 18 U.S.C. § 3584 (b); *see also United States v. Villa-Castaneda*, 755 F. App'x 511, 523 (6th Cir. 2018) (since the Guidelines are a § 3553(a) factor, imposition of a Guidelines sentence, "adds to the already-weighty case for consecutive sentences"); and Gov's Resent. Mem. at 5, n.5.[4]

**C.     The previously calculated Guidelines sentencing range is the law of the case.**

The defendant seems to suggest that the Court should revisit the Guidelines sentencing range. *See, e.g.,* Def. Reply at 9-13. The Court previously calculated the Guidelines sentencing range. United States v. *Khatallah*, 314 F. Supp. 3d 179, 202 (D.D.C. 2018) ("As a result, the total offense for Counts One, Two, and Sixteen is 54. And because of the terrorism enhancement, Abu Khatallah's criminal history category is VI. The Guidelines sentence for these three counts is therefore life imprisonment.") (citations omitted); *see also* Khatallah, 41 F.4th at 646 ("[T]he district court concluded that the Guidelines sentence for the two support-of-terrorism convictions, along with the property-destruction conviction, was life imprisonment. The Section 924(c) count carried a statutory minimum of ten years to run consecutively to any other sentence, so Khatallah's

---

[4]     The defendant argues that a "package sentence" of 22 years' imprisonment is appropriate here because the defendant's Section 924(c) conviction rest on a potentially faulty predicate crime of violence (§ 1363). Def. Mem. at 15-16. On appeal, the D.C. Circuit, however, upheld the defendant's conviction under Section 924(c). *Khatallah*, 41 F.4th at 635. That holding – not the holding in *United States v. Melaku*, 41 F.4th 386 (4th Cir. 2022) – is binding on the Court.

advisory Guidelines sentence for all counts of conviction was life in prison plus ten years."). The defendant did not challenge that Guidelines sentencing calculation on appeal. *Khatallah*, 41 F.4th at 648 ("Because Khatallah does not otherwise dispute the government's calculation, we take as given that the Guidelines range would have been 30 years to life even without relying on acquitted conduct.").

The Court's previously calculated Guidelines sentencing range is, therefore, the law of the case. *See, e.g., United States v. Thomas*, 572 F.3d 945, 949 (D.C. Cir. 2009) (Because [defendant] failed in his first appeal to challenge the district court's determination that he should be sentenced under the ACCA, the decision to sentence him thereunder is the law of the case binding on remand."). Moreover, since the defendant did not challenge on appeal the Guidelines sentencing calculation, he has waived any objection. *See, e.g.*, *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257–58 (D.C. Cir. 2015) ("a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, governs future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.") (alterations, internal quotation marks, and citations omitted).[5]

---

[5] The defendant's attempt to undermine the import of the terrorism enhancement and the role adjustment because they were not determined by the jury (at 10-12) falls flat. As a legal matter, it is the judge, not the jury, who determines whether the Guidelines' terrorism enhancement applies and who evaluates, among other things, the nature and circumstances of the defendant's offenses. *See United States v. Alhaggagi*, 978 F.3d 693, 699 (9th Cir. 2020) ("To trigger this [terrorism] enhancement, the government must prove elements distinct from those of the crime of conviction, specifically that the offense committed 'involved, or was intended to promote, a federal crime of terrorism.' ") (quoting U.S.S.G. § 3A1.4); *see also* U.S.S.G. § 6A1.3 ("*The court shall resolve* disputed sentencing factors at a sentencing hearing in accordance with Rule 32(i), Fed. R. Crim. P.") (emphasis added). Moreover, the D.C. Circuit found that "the jury did not acquit Khatallah of the conduct that would support application of the terrorism and leadership enhancements. Instead, its verdicts are consistent with a finding that Khatallah undertook conduct that would support those enhancements." *Khatallah*, 41 F.4th at 648.

### III. The defendant's request for a downward variance based on his conditions of confinement should not be reconsidered.

The defendant argues that he should receive a downward variance based on his conditions of conferment. Def. Mem. at 16-18. Inasmuch as the defendant previously made this request and it was rejected, it cannot be reconsidered. In any event, the defendant's conditions of confinement would not constitute a proper basis for a variance.

First, at the original sentencing the defendant argued, that "[t]he Court should also consider that the four years that Mr. Abu Khatallah has served since his arrest on June 16, 2014, have been served under particularly punishing circumstances, *and these circumstances are likely to continue throughout his incarceration.*" ECF #532 at 22 (emphasis added). The Court did not grant a variance on this basis; that is now the law of the case. Furthermore, by not challenging this on appeal, the defendant waived this argument. *See generally* II.C., *supra*.[6]

Second, even if consideration of the defendant's conditions of confinement were not procedurally barred, it is not appropriate to consider conditions of confinement when fashioning a sentence. *See, e.g., United States v. Navarro*, 218 F.3d 895, 898 (8th Cir. 2000) (when the nature of a defendant's offense required that he be "held more securely, the result is simply the permissible consequence" of, among other things, his commission of the offense of confinement

---

[6] Additionally, while "the district court is further authorized to consider facts that did not exist at the time of the original sentencing," *United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013), the facts surrounding the defendant's conditions of confinement did exist at the original sentencing. *See also United States v. Khatallah*, No. 14-cr-141, 2024 WL 3985917, at *3 (D.D.C. Aug. 29, 2024) (The D.C. Circuit has "emphasized that this more restrictive approach . . . that the [defendant] 'could not offer new evidence in support of the sentencing level for which it had unsuccessfully argued at the original sentencing hearing' where no 'special circumstances' justified its failure to meet its mark the first time.") (citations omitted). Also, while the description of the defendant's conditions of confinement is unattributed, it appears to be based on claims made by the defendant, which are not subject to cross examination. The description of the conditions of confinement is, therefore, unreliable. *Id.* at 8 ("Cross-examination is particularly important here, moreover, because the statements themselves raise more than a few credibility concerns.").

and not a reason to reduce his sentence); *cf. United States v. Camiscione*, 591 F.3d 823 (6th Cir. 2010) (concern, based on the defendant's offense of conviction, that he would be vulnerable in the general prison population is an improper sentencing consideration).

IV. **The cases cited by the defendant regarding unwarranted sentencing disparities are not comparable.**

The cases cited by the defendant in support of his argument that adherence to the original sentence is necessary to avoid unwarranted sentencing disparities (at 18-19) are not comparable to this case. As a threshold matter, since the sentence in *United States v. Al-Iman*, 17-cr-213 (D.D.C.), was imposed before the D.C. Circuit determined that the defendant's sentence was substantively unreasonable, that sentence carries little if any value as a comparable. Additionally, Al-Imam had a substantially less significant role in the attack on the Mission than that of the defendant. The Court found that the defendant (unlike Al-Imam) agreed with individuals, who were involved in the initial attack on the Mission, "to conduct an armed attack on the Mission." *Khatallah*, 314 F. Supp. 3d at 195. Additionally, the Court found that the defendant (unlike Al-Imam) "at the very least" (1) "drove some of [his] men to the Mission" the night of the attack, (2) was "in telephone contact with several of them before, during, and after" the attack, (3) "appeared on camera, armed, entering a Mission building while it was being ransacked," and (4) "drove several of [his men] away to the camp of another extremist group after the attack." Sent. Trans. at 54.[7]

---

[7] Contrary to the defendant's assertion (at 18), it is not "notable" for these purposes that the government has decided not to contest Al-Imam's sentence. *See United States v. Mendoza*, 464 U.S. 154, 160-161 (1984) ("But the government's litigation conduct in a case is apt to differ from that of a private litigant. Unlike a private litigant who generally does not forego an appeal if he believes that he can prevail, the [government] considers a variety of factors, such as the limited resources of the government and the crowded dockets of the courts, before authorizing an appeal.").

The other case cited by the defendant, *United States v. Ortega-Hernandez*, No. 12-cr-14 (APM), 2023 WL 4419770 (D.D.C. July 10, 2023), is even less comparable to this case. For example, *Ortega-Hernandez* did not involve the killing or injury of anyone, let alone the killing of an incumbent American ambassador for the first time in 40 years, which "shocked the American public." *Khatallah*, 41 F.4th at 618. Instead, *Ortega-Hernandez* involved a defendant, who was experiencing a "mental health crisis," who hurt no one, and who pleaded guilty. *Ortega-Hernandez*, 2023 WL 4419770, at *1.[8]

Again, as the D.C. Circuit has stated: "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) (citation and internal quotation omitted); *see also United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (same).

---

[8] Additionally, the counts of conviction in *Ortega-Hernandez* were different from this case; therefore, the Guidelines sentencing range was different. Ortega-Hernandez pleaded guilty to violating 18 U.S.C. §§ 924(c) and 1363. He was not convicted of material support for terrorism. His one terrorism count of conviction carried a statutory maximum of 20 years; and his guidelines range, even with the terrorism enhancement, was 24 to 27.5 years. *See* Gov. Sent. Memo. [ECF # 66], at 2.

9

V.     **Conclusion**

Based on the severity of his crimes and his utter lack of remorse, the government continues to believe that the defendant deserves a life sentence. We understand that the Court previously sentenced the defendant to 10 years' imprisonment on Count 18 (to be served consecutively to the other sentences), which is the only count of conviction carrying a potential sentence of life. Accordingly, if the Court once again imposes the mandatory minimum 10-year sentence for Count 18, the government asks that the Court impose consecutive statutory maximum sentences for the defendant's terrorism convictions (Counts 1, 2, and 16) – for a total of 50 years' imprisonment. This would result in a total sentence of 60 years' imprisonment, which is within the sentencing range prescribed by the Guidelines. None of the defendant's arguments to the contrary is availing.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/
John Crabb Jr.
Assistant United States Attorney
N.Y. Bar No. 2367670

Michael C. DiLorenzo
Special Assistant U.S. Attorney
MD Bar No. 931214 0189

United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1794
john.d.crabb@usdoj.gov